ELFRIEDA STRAHS, Plaintiff-Appellant, v. TOVAR'S SNOWPLOWING, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—03—0561

Opinion filed June 16, 2004.

Charles A. Boyle and Jennifer L. Barron, of Charles A. Boyle & Associates, Ltd., and William J. Harte, Ltd., both of Chicago, for appellant.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Scott L. Howie, of counsel), for appellee Tovar's Snowplowing, Inc.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Garrett L. Boehm, Jr., of counsel), for appellees Walgreen Company and Bond Drug Company.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff, Elfrieda Strahs, appeals from an order of the circuit court of Cook County granting the motion of defendants Tovar's Snowplowing (Tovar), Walgreen Company (Walgreen), and Bond Drug Company of Illinois (Bond Drug) for a directed verdict at the close of plaintiff's premises liability case.

## BACKGROUND

This suit originates from a fall suffered by plaintiff on the morning of January 15, 2001, in a parking lot adjacent to the Walgreen's store at the Irving Park Streamwood Plaza (Streamwood Plaza). Plaintiff, then 84 years old, parked her car in the lot, walked toward the Walgreen's entrance and slipped on what she believed was a patch of black ice. She testified at trial that the parking lot was wet at the time of the accident, as were the roads between her home and the store, and she felt ice on the pavement when she tried to lift herself up. She sustained several injuries, including a fractured hip.

The building occupied by Walgreen and the parking lot was owned by a trust of which Amalgamated Bank of Chicago (Amalgamated) was trustee. Bond Drug, a subsidiary of Walgreen, leased the store building from Amalgamated. The lease agreement provided that certain portions of the parking lot were for the use of Walgreen's customers and employees. Under the lease, the landlord, Amalgamated, was responsible for the prompt removal of snow and ice from the parking area. Bond Drug had the right to give notice to Amalgamated if it failed to properly remove snow and ice. And if Amalgamated failed to remedy or fix the situation after 30 days, Bond Drug could do the maintenance itself and deduct the cost from its rent. National Shopping Plazas, Inc. (National), ultimately managed the property for

Amalgamated and contracted with Tovar for the removal of accumulations of snow and for chemical treatment of ice in the parking lot.

On June 29, 2001, plaintiff filed a premises liability cause of action against defendants in which she alleged, in relevant part, that Tovar negligently created, caused, and/or contributed to unnatural accumulations of ice and snow in the parking lot which resulted in her slip and fall. She further alleged that Walgreen and Bond Drug were aware of the icy conditions in the parking lot on the morning of the accident but negligently failed to remove or warn of the danger.

At the jury trial, plaintiff testified that on the morning of January 15, 2001, the temperature hovered around freezing and that a light rain had fallen prior to when she departed for Walgreen's around 9 a.m. She noticed that the pavement was wet when she pulled into the parking lot, but she did not see any ice. There were piles of dirty snow along the Irving Park perimeter that were approximately one or two feet high and extended a foot or two into the lot. After plaintiff parked her car, she took four or five steps towards the Walgreen's entrance when her right foot slipped on some ice, causing her to fall to the pavement in a sitting position. She tried lifting herself up with her left hand and felt "ice squishing through her fingers." As she sat on the pavement, she assumed that the ice had been formed from precipitation that had not drained off, although she was unaware of any drains in the parking lot that sloped downward toward the store.

On cross-examination, plaintiff acknowledged that on the morning of her accident the streets were uniformly wet, as would be typical after it rained. She thought that the water came from the snow piles because "where else would that water come from." Plaintiff testified that she did not believe the water came from the rain, although she conceded that she never observed any water flowing through the parking lot and only assumed the water came from the melting snow piles.

Plaintiff's son, Glen Strahs, testified that he drove to the Streamwood Plaza parking lot for the first time on the evening of January 15, 2001, and observed piles of plowed snow in a number of locations in and around the parking lot area.

Janice Fitzpatrick, National's property manager, testified that the tenants at Streamwood Plaza were not responsible for snow and ice removal in the parking area. Tovar was expected to monitor the lot for ice and snow accumulation, and tenants could contact Tovar directly if there was a problem with ice and snow accumulation.

Jeff Tovar, the president of Tovar, testified that the company was responsible for ice and snow removal at approximately 150 properties, including Streamwood Plaza. The snow at the front of Streamwood Plaza was plowed by them onto a flat grassy area at the northwest

corner of the property and left to melt. After reviewing various records, he testified that 25 inches of snow had fallen in the area in December of 2000, and that prior to plaintiff's accident the parking lot had last been plowed on December 31, 2000. On January 9, 2001, he visited Streamwood Plaza and observed water flowing in a couple of areas from the north side of the parking lot. He also observed natural accumulations of snow along the Irving Park perimeter from the December 2000 storms which were gradually melting.

Barbara Creamer, a cashier at the Streamwood Plaza Walgreen's, noticed that the parking lot was slippery when she arrived at work approximately two hours prior to plaintiff's accident but never informed anyone of the lot's condition. Around 9:30 a.m., she was told that an elderly lady had fallen in the parking lot. She immediately went outside and saw plaintiff being physically supported by a man in the parking area. She also observed black ice on the sidewalk and in the parking lot which made the area slippery.

Nina Ryan, a bookkeeper at the Streamwood Plaza Walgreen's, also noticed that the parking lot was slippery when she arrived at work around 8 a.m. on January 15, 2001. She slid a little bit when she exited her car and had to hold onto the vehicle's door. She did not recall telling anyone that she slid in the parking lot prior to plaintiff's accident.

John Bailey, Walgreen's store manager at Streamwood Plaza, testified that the parking lot was slippery when he arrived at work approximately three hours prior to plaintiff's fall and that his car swerved when he attempted to park. The Walgreen's store was at the south end of the parking lot and at a lower level than Irving Park Road to the north. At his deposition, Bailey testified that "in the back of his mind" he thought that someone could fall on the ice, and he intended to call Fitzpatrick around 8:30 or 9 a.m. At trial, he testified that he did not intend to call her until after 9:30 a.m. when he learned of plaintiff's accident from Creamer.

At the completion of plaintiff's case, Tovar, Walgreen and Bond Drug all moved for a directed verdict. The trial court granted defendants' motions, and this appeal ensued.

On appeal, plaintiff contends that the trial court erred in granting defendants' motions for a directed verdict. She also argues that the trial court made certain errors in its evidentiary rulings.

## ANALYSIS

■ As a threshold matter, we address Tovar's claim that we lack jurisdiction over this appeal. Tovar's contention is based upon the fact that after National was severed by the trial court as a defendant in

this case, the trial court did not include Rule 304(a) (155 Ill. 2d R. 304(a)) language that the judgment at issue here was suitable for review without resolution of plaintiff's claim against National.

The record, however, reveals that when the trial court severed National from this case and consolidated it with another (No. 03 L 483), it specifically entered an order that "plaintiff's claims against National shall proceed separate from the other claims and parties to 01 L 7843." The order also specified that the trial court "intend[ed] this severance to be in the narrow sense as instructed by *Carter v. Chicago & Illinois Midland Railway*." Accordingly, we reject Tovar's claim that we lack jurisdiction over this appeal. See *Carter v. Chicago & Illinois Midland Ry. Co.*, 119 Ill. 2d 296, 307-08 (1988) (where the trial court, in its severance order, clearly and unequivocally states that a party has indeed been severed, "in the narrow sense of that word," and that the party shall proceed thereafter separate from the other claims or parties to the case, there is no need for Rule 304 language).

We next turn to plaintiff's contention that the trial court erred in granting Tovar's motion for a directed verdict. Plaintiff argues, in essence, that there was sufficient evidence to present to a jury that in removing snow from the parking lot, Tovar breached its duty to place the removed snow in such a way that it would melt without creating a hazard. Plaintiff also argues that the trial court improperly barred her testimony that the snow appeared to be plowed snow as opposed to fallen snow.

In directing a verdict, the trial court concludes as a matter of law that there are no evidentiary facts out of which the jury may construe the necessary facts essential to recovery. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112 (2004). Therefore, the trial court should enter a directed verdict only in those cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based upon the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). We determine *de novo* whether the trial court's entry of a directed verdict was proper as a matter of law. *Sullivan*, 209 Ill. 2d at 112.

In Illinois, in the absence of a contractual obligation, there is generally no duty with respect to the removal of natural accumulations of snow, water and ice. *Ziencina v. County of Cook*, 188 Ill. 2d 1, 10-11 (1999); *Handy v. Sears, Roebuck & Co.*, 182 Ill. App. 3d 969, 971 (1989). A landowner may be liable, however, for injuries that are the consequence of an unnatural or artificial accumulation, or a natural condition that is aggravated by the owner. *Handy*, 182 Ill. App. 3d at 971. Specifically, for purposes of this appeal, a snow-removal contrac-

tor has a duty to a third-party patron such as plaintiff "not to negligently remove snow by creating or aggravating an unnatural accumulation of snow or ice." *McBride v. Taxman Corp.*, 327 Ill. App. 3d 992, 996 (2002) ("snow-removal contractor could be liable to grocery store customer who fell in adjacent parking lot for either creating an unnatural accumulation of ice or snow or for aggravating a natural accumulation of ice or snow"), citing *Madeo v. Tri-Land Properties, Inc.*, 239 Ill. App. 3d 288 (1992); *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 330 (1992) (duty of snow-removal contractor to customer of parking lot was to perform snow removal in a nonnegligent fashion; to show breach plaintiff had to show that contractor caused an unnatural accumulation of ice); *Burke v. City of Chicago*, 160 Ill. App. 3d 953, 957 (1987) (snow-removal contractor hired by city, which leased portion of airport to airline, could only breach duty to airline employee, who fell on ice at airport after snow was plowed, by causing an unnatural accumulation or by negligently plowing).

We find *Crane* to be instructive. The plaintiff in *Crane* slipped and fell on a patch of ice in the defendant's parking lot after she got out of her car. Plaintiff had backed her car into a space which was adjacent to a snow pile that encircled the perimeter of the lot and had been plowed by the defendant. The temperature in the area had fluctuated above and below the freezing mark in the days prior to the accident. While on the ground, the plaintiff felt around and determined that she was lying on an ice patch. The plaintiff stated that she was " '99 and 99/100% sure' " that she slipped on ice that had formed when the piled-up snow melted, collected in depressions in the defendant's lot and refroze. *Crane*, 228 Ill. App. 3d at 327. The plaintiff's belief as to how the ice formed did not constitute a sufficient factual basis for her assertion that the ice upon which she allegedly slipped and fell was created by the unnaturally accumulated snow piles encircling the parking lot. Consequently, we concluded that summary judgment in favor of the defendant was proper because the plaintiff had failed to show any "nexus," other than complete speculation, between the snow pile on the periphery of the lot and the ice where she slipped. *Crane*, 228 Ill. App. 3d at 327-32.

As in *Crane*, plaintiff in the instant case was required to provide some factual basis that the patch of ice upon which she fell was an artificial or unnatural accumulation caused by Tovar's snow plowing. While she did testify that she felt ice squishing through her fingers after her fall, she acknowledged that it had recently rained, the streets were uniformly wet, she did not see any water flowing from the snow piles through the parking lot, and she only assumed that the ice formation upon which she fell was created by the melting snow piles. Her

son's testimony that he observed piles of plowed snow in a number of locations in and around the lot did not constitute a sufficient factual basis that the ice formation at issue was created by one of these snow piles. As in *Crane*, we find there was no sufficient nexus between the plowed snow piles on the periphery of the Streamwood Plaza lot and the ice formation upon which plaintiff slipped that would have potentially entitled her to judgment against Tovar. We conclude that plaintiff's case against Tovar failed factually as a matter of law and that the trial court properly granted its motion for a directed verdict.

■ Alternatively, plaintiff claims that the trial court improperly barred her from testifying that the snow along the perimeter appeared to be plowed snow, as opposed to fallen snow, based upon the following colloquy:

> "[PLAINTIFF'S COUNSEL]: Can you describe how the snow looked along Irving?
>
> [PLAINTIFF]: It had been plowed.
>
> [TOVAR'S COUNSEL]: Objection. Foundation. Move to strike.
>
> [THE COURT]: Sustained. The answer will be stricken. The jury will disregard the answer."

Plaintiff's attorney proceeded to ask her again to describe the snow, and plaintiff was allowed to testify that it looked dirty, that it extended approximately one foot into the parking lot, and it was about one or two feet high. Accordingly, we find the record refutes plaintiff's characterization that she was barred from testifying about the nature of the snow accumulation along the perimeter.

■ Plaintiff next contends that the trial court erred in granting Walgreen's and Bond Drug's motions for a directed verdict. She claims that Walgreen had a duty to warn her of a foreseeable danger of which it was aware in the parking lot, and that it had voluntarily assumed a duty regarding the maintenance of the lot. Plaintiff's voluntary assumption argument is based upon her claim that Walgreen could contact Tovar directly if there was a problem with the maintenance of the parking lot, and that the lease agreement provided defendants with a certain number of parking spaces and the right to "self-help." Plaintiff also contends that the trial court abused its discretion in various evidentiary rulings that it made.

In a premises liability cause of action, one of the essential elements is the existence of a duty owed by the defendant to the plaintiff. *Schmid v. Fairmont Hotel Co.-Chicago*, 345 Ill. App. 3d 475, 483 (2003). Whether a duty exists is a question of law. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). While we recognize the general rule regarding the duty of an owner or lessee of any premises to provide a reasonably safe means of access to its business (*Bloom v. Bistro*

*Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 712 (1999), citing *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App. 3d 345 (1971)), it was uncontroverted that plaintiff fell in the shopping center parking lot before she even reached the sidewalk that bordered the Walgreen's store. The building occupied by Walgreen and the parking lot area were owned in trust by Amalgamated, which, under the lease agreement, was responsible for the removal of snow and ice from the lot.

Plaintiff provides us with no legal authority, and there is no basis for us to conclude, that Walgreen or Bond Drug had a duty to warn of or remove any dangerous condition in the parking lot because of any purported notice of icy conditions before plaintiff's accident. We find plaintiff's argument that defendants voluntarily assumed a duty, based upon the lease agreement's "self-help" provision, that the lease provided defendants with the use of a certain number of parking spaces, and that defendants had the ability to contact Tovar directly to come out and treat the parking lot, equally unpersuasive and not supported by case law. See generally *Collins v. Mid-America Bag Co.*, 179 Ill. App. 3d 792, 794 (1989) (organizer of softball game did not owe a duty to softball player concerning the condition of the playing field because organizer was a permissive user of the field and, therefore, did not control the field). We further note that the self-help provision that plaintiff relies upon only provided Bond Drug with the ability to perform the parking lot maintenance and deduct the cost from its rent if the landlord failed to meet the lease requirements for the maintenance of the parking area *30 days after* the tenant provided notice. For the foregoing reasons, we find the trial court properly granted Walgreen's and Bond Drug's motions for a directed verdict.

Finally, plaintiff argues, in the alternative, that the trial court abused its discretion in barring any evidence that maintenance costs for the parking lot were passed through National to Bond Drug, that a prior car accident had occurred in the parking lot, and that Walgreen's employees salted and shoveled the area immediately outside the store.

The determination as to the admissibility of evidence rests with the discretion of the trial court, and its determinations will not be overturned absent a clear abuse of discretion. *Simmons v. Garces*, 198 Ill. 2d 541, 570 (2002). Based upon our determination above, and after reviewing the evidence at issue, we find that the trial court did not abuse its discretion in its evidentiary rulings.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.