CINDY BUFFA, as Special Adm'r of the Estate of Gregory Buffa, Deceased, Plaintiff-Appellant, v. LIAQUAT HAIDERI *et al.*, Defendants and Counter-plaintiffs-Appellants (Illinois State Toll Highway Authority, Defendant and Counterdefendant-Appellee).

Second District Nos. 2—05—0319, 2—05—0426 cons.

Opinion filed November 16, 2005.

Esther Joy Schwartz and David S. Allen, both of Stellato & Schwartz, Ltd., for appellants Liaquat Haideri and A&H Transportation, Inc.

Peter T. Vrdolyak, of Vrdolyak Law Group, L.L.C., of Tinley Park, for appellant Cindy Buffa.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellee Illinois State Toll Highway Authority.

JUSTICE BYRNE delivered the opinion of the court:

In these consolidated appeals, plaintiff, Cynthia Buffa, as special administrator of the estate of Gregory Buffa, appeals from an order of the circuit court of Du Page County entering summary judgment for the defendant Illinois State Toll Highway Authority (Authority) in plaintiff's wrongful death lawsuit. Defendants Liaquat Haideri and A&H Transportation, Inc. (A&H, or, together with Haideri, the A&H defendants) appeal from that order and from the dismissal of their counterclaim for contribution from the Authority. We affirm.

Plaintiff's four-count complaint alleged that, on December 2, 2001, while riding a motorcycle on Interstate 355, a toll road operated by the Authority, decedent suffered fatal injuries in a collision with a vehicle operated by Haideri. Count I sought recovery from Haideri for negligence. Count II sought recovery from A&H on the basis that, under agency principles, it was liable for Haideri's negligence. Counts

III and IV alleged that icy conditions on the roadway caused decedent's death and that the Authority caused or created the hazard or failed to properly remove the ice or warn motorists of the hazard. Count III claimed that the Authority acted negligently. Count IV claimed that the Authority acted with reckless disregard for decedent's safety.

After unsuccessfully moving to dismiss counts III and IV for failure to state a cause of action, the Authority moved for summary judgment on those counts. In support of the motion, the Authority submitted a copy of the deposition of Reed Dewey, who was a friend of decedent and who partially witnessed the accident. Dewey testified that on the morning of the accident he and decedent set out from Mount Prospect on their motorcycles. They proceeded along Route 53 to Interstate 355. Dewey noticed fog as he and decedent rode, and he observed that ice was forming on his chaps. He also noticed that bridges and overpasses were icing up. According to Dewey, as they went through the I-PASS lane at the Army Trail Road Toll Plaza, decedent's motorcycle started to fishtail, and Dewey realized that they were riding on ice. Dewey saw decedent's motorcycle begin to fall over, but he did not see decedent's actual impact or his collision with Haideri's vehicle. According to Dewey, the toll plaza was essentially constructed on an overpass.

In support of its summary judgment motion, the Authority argued, in essence, that there was no evidence that the ice that caused decedent's accident was anything but a natural accumulation and that the Authority had no duty to protect decedent from the risk of harm from a natural accumulation of ice. In response, plaintiff conceded that the ice was a natural occurrence. However, she argued that liability should be imposed based on the Authority's own undertaking to remove snow and ice from the roads under its control. Plaintiff acknowledged the holding of *Chisolm v. Stephens*, 47 Ill. App. 3d 999 (1977), that a gratuitous undertaking to remove ice does not give rise to a continuing duty to do so; thus, liability ordinarily can be imposed only for misfeasance, *i.e.* performing the undertaking negligently, rather than nonfeasance, *i.e.* failing to perform the undertaking altogether. *Chisolm*, 47 Ill. App. 3d at 1006 (a person who has gratuitously assumed to protect others against injury is under no obligation to continue that protection indefinitely). However, plaintiff argued that *Chisolm* recognized that liability for nonfeasance in connection with a gratuitous undertaking may arise where the beneficiaries had relied on its performance. *Chisolm*, 47 Ill. App. 3d at 1007. In opposition to the Authority's motion, plaintiff submitted a copy of literature placed on the Internet by the Authority, which boasted of the Authority's commitment to providing "safe, well-maintained

roads" and of its "[n]early 400 roadway maintenance employees ***
located at 11 facilities throughout the [tollway] system to provide
exemplary 24-hour snow and ice removal, bridge maintenance, minor
pavement repair, incident management, and other roadway related
activities." Plaintiff also submitted a copy of the Authority's "Snow
and Ice Control Manual," which set forth detailed procedures for
clearing roads of ice and snow, including the use of "Dawn Patrols" to
check for frost buildup on bridges prior to morning rush hours.

The trial court entered summary judgment for the Authority on
count IV, alleging recklessness, but denied summary judgment as to
count III, the simple negligence count. Thereafter, the A&H defendants
filed a counterclaim against the Authority, seeking contribution based
upon allegations similar to those of count III of plaintiff's complaint.
The Authority moved to dismiss the counterclaim pursuant to section
2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West
2004)). The Authority also moved for reconsideration of the denial of
its motion for summary judgment on count III. Among other things,
the Authority took issue with the notion that decedent could have
relied on the Authority's Internet literature or its snow removal policy.
The Authority submitted affidavits indicating that the Internet docu-
ment submitted by plaintiff was not placed on the Internet until
almost a year after the accident and that the Authority's Snow and Ice
Control Manual is an internal document that is not disseminated to
the public.

On August 10, 2004, the trial court entered an order (1) granting
the motion to reconsider and entering summary judgment for the
Authority on count III, and (2) granting the Authority's motion to
dismiss the A&H defendants' counterclaim. The order recited that it
was "final and appealable." Plaintiff and the A&H defendants filed
separate notices of appeal, but the Authority successfully moved to
dismiss the appeals on the basis that the language of the August 10,
2004, order was insufficient to confer jurisdiction under Supreme
Court Rule 304(a) (155 Ill. 2d R. 304(a)). Thereafter, on March 17,
2005, the trial court entered an order providing, in pertinent part, as
follows:

> "This Court's order granting the [Authority's] Motion to
> Reconsider, and entering summary judgment in favor of [the
> Authority] *** on *August 24, 2004*, and this Court's order of *August
> 24, 2004* dismissing *** [the A&H defendants'] Counterclaim for
> Contribution *** are made final and appealable under Supreme
> Court Rule 304(a), with the Court making the express finding(s),
> that no just cause exists to delay the enforcement of or appeal from
> this order of summary judgment and this order of dismissal."
> (Emphasis added.)

On March 30, 2005, the trial court entered an order correcting "typographical errors" in the March 17, 2005, order by changing "August 24, 2004," to "August 10, 2004." The A&H defendants filed a notice of appeal on March 31, 2005. Plaintiff filed her notice of appeal on April 26, 2005. Plaintiff and the A&H defendants jointly moved to consolidate the appeals, and we granted the motion. Plaintiff has not filed an appellate brief, but in connection with the motion to consolidate, plaintiff stated her intention to adopt the briefs submitted by the A&H defendants.

■ Initially the Authority challenges this court's jurisdiction to hear plaintiff's appeal. We note that we have an independent obligation to verify our jurisdiction over every appeal that is filed in this court. *Fligelman v. City of Chicago*, 264 Ill. App. 3d 1035, 1037 (1994). If our examination reveals jurisdiction to be lacking, we must dismiss the appeal. *Fligelman*, 264 Ill. App. 3d at 1037. These appeals are governed by Supreme Court Rule 304(a), which provides, in pertinent part, that "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 155 Ill. 2d R. 304(a). The time for filing the notice of appeal is governed by Supreme Court Rule 303 (210 Ill. 2d R. 303), and "[i]n computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment." 155 Ill. 2d R. 304(a).

■ The trial court initially entered a Rule 304(a) finding on March 17, 2005. That finding incorrectly referred to the underlying summary judgment/dismissal order as having been filed on August 24, 2004, rather than August 10, 2004, when it was actually entered. The Authority argues that, despite the error, the Rule 304(a) finding sufficiently identified the order, thus triggering the 30-day period for filing a notice of appeal. Thus, according to the Authority, plaintiff's notice of appeal, filed on April 26, 2005, was untimely. We disagree.

The trial court entered the incorrect order on March 17, 2005, expressly finding no reason to delay enforcement or appeal, which apparently rendered the judgment immediately appealable under Rule 304(a). However, a postjudgment "Motion to Correct Typographical Error" was timely filed within 30 days, tolling the time for appeal under Rule 303. See *McCorry v. Gooneratne*, 332 Ill. App. 3d 935, 939-40 (2002). Therefore, the period for filing a notice of appeal commenced on March 30, 2005, when the motion was granted, and

plaintiff's April 26, 2005, notice of appeal was timely filed within 30 days.

The Authority does not dispute that the A&H defendants properly perfected their appeal and that they have standing to seek review of the summary judgment against plaintiff. As noted, plaintiff has not filed her own briefs, but instead has adopted the A&H defendants' briefs. In sum, regardless of whether plaintiff's notice of appeal was timely, the order she seeks to review is properly before us, as are the arguments she seeks to advance.

Turning to the merits, summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2004). Summary judgment is a drastic remedy and should be allowed only when the right of the moving party is clear and free from doubt. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291 (2000). On appeal from an award of summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Jones*, 191 Ill. 2d at 291. The trial court's ruling on a summary judgment motion is subject to *de novo* review. *Jones*, 191 Ill. 2d at 291.

■ The A&H defendants' theory of liability is predicated on section 323 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 323, at 135 (1965)), which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

■ Initially, the A&H defendants contend that the trial court erred in granting the Authority's motion for reconsideration of its summary judgment ruling because the court improperly relied on new evidentiary materials that could have been submitted before the summary judgment motion was decided. In response to the Authority's summary judgment motion, plaintiff submitted literature, including material available on the Internet, describing the Authority's ice and snow removal program. In initially denying the Authority's motion for summary judgment, the trial court reasoned that the Authority had created an expectation in the general public that it would perform these

ice and snow removal services and therefore owed a duty to exercise reasonable care in doing so. However, in its motion for reconsideration, the Authority submitted affidavits indicating that the literature submitted by plaintiffs did not appear on the Internet until after the accident and was not otherwise widely disseminated. The A&H defendants argue that absent the Authority's affidavits, the record shows the existence of a genuine issue of material fact with respect to whether the decedent suffered harm in reliance on the Authority's undertaking to remove snow and ice and that summary judgment was properly denied. They contend that the trial court erred in reconsidering its ruling on the basis of new evidence.

The Authority responds that even without the new evidence, it is entitled to summary judgment. It posits that it was under no duty to remove snow and ice on the date of the accident, even though it may have done so in the past. See, *e.g.*, *Burke v. City of Chicago*, 160 Ill. App. 3d 953 (1987). In essence, the Authority argues that since it did not undertake any plowing operations in the area where the accident occurred, it cannot be held liable. The question posed, therefore, is whether the Authority's alleged failure to exercise care represents negligent performance of an undertaking or the *absence* of an undertaking. It is unnecessary to resolve the question, however. Assuming, for the sake of argument, that the Authority owed decedent a duty of care, the trial court's consideration of the new evidence that the Authority submitted with its motion for reconsideration is not grounds for reversal. It is true that a trial court is not necessarily obliged to consider new evidence after ruling on a summary judgment motion. For instance, in *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989), it was stated that "[t]he submission of a new matter on such a motion after a motion for summary judgment has been granted lies in the discretion of the trial court [citation], but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing." It is significant here, however, that the summary judgment motion was originally *denied*, not granted as in *Delgatto*. As this court has noted:

> "Section 2—1005 of the Code of Civil Procedure [citation] places no limit on the number of motions for summary judgment that may be brought by a party. [Citation.] *** Furthermore, the denial of a motion for summary judgment is an interlocutory order which is neither final nor appealable and, thus, cannot form the basis for a claim of *res judicata*. [Citation.] Finally, *** a trial court may deny a motion for summary judgment and later change its position and grant that same motion." *Lawrence & Allen, Inc. v. Cambridge Human Resources Group, Inc.*, 292 Ill. App. 3d 131, 136-37 (1997).

Accordingly, to reverse on the grounds that the trial court improperly considered new evidence would be little more than an empty gesture, because the Authority could simply file another summary judgment motion including the evidence and setting the stage for another appeal raising the same substantive issue. To reverse under these circumstances would be contrary to the interests of judicial economy, and we decline to do so.

The record does not establish the existence of a genuine issue of fact with regard to whether decedent was injured because of reliance on an undertaking by the Authority to remove ice and snow. Therefore, to prevail under the Restatement analysis, plaintiff would have to establish that the Authority's failure to exercise reasonable care increased the risk of harm from the icy road conditions. Beginning again with the premise that the Authority had, in fact, entered into an undertaking, the A&H defendants argue that "a trier of fact can reasonably infer that removal of accumulations of ice and snow from the area near toll plazas contributes to the safety of the tollway's motorists," and that "[f]rom this premise it naturally follows that the failure to perform this service increases the risk to motorists generally and increased the risk of harm to plaintiff's decedent." The argument turns the Restatement analysis on its head, however, by imposing liability for failing to *decrease* a risk of harm rather than for increasing it. Accord *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416 (1994) (although plaintiff in wrongful death action could potentially recover under the theory that the decedent, who drowned in a swimming pool operated by the defendant, relied on the defendant's voluntary undertaking to provide lifeguards, plaintiff could not recover on the basis that the risk of harm to the decedent was increased because all lifeguards were on break when the drowning occurred). Consistent with the Restatement view, Illinois cases have generally limited recovery for negligent snow or ice removal to cases where the removal effort results in an unnatural accumulation of snow or ice or adds to an existing hazard. See, *e.g.*, *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 994 (2002); *Kiel v. City of Girard*, 274 Ill. App. 3d 821, 825 (1995). Here, there is no such evidence, and the Authority was entitled to summary judgment.

For the same reasons, the trial court properly dismissed the A&H defendants' counterclaim for contribution. Although a motion to dismiss (unlike a summary judgment motion) admits all well-pleaded facts and attacks the sufficiency of the complaint (*Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 699-700 (2005)), the counterclaim here does not allege that the Authority created an unnatural accumulation of ice or aggravated an existing hazard. As such, the

counterclaim was legally insufficient and properly dismissed. The A&H defendants further argue that they should have been given leave to amend the counterclaim. If a plaintiff can state a cause of action by amending its complaint, dismissal with prejudice should not be granted. *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 26 (2001). Here, however, the A&H defendants have not suggested that they can allege in good faith that the Authority created or aggravated the hazard that allegedly led to decedent's death. Accordingly the trial court did not abuse its discretion in dismissing the counterclaim with prejudice. See *Hull v. Southern Illinois Hospital Services*, 356 Ill. App. 3d 300, 305 (2005).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON and GROMETER, JJ., concur.