In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1099

LELA CICIORA,

*Plaintiff-Appellant,*

*v.*

CCAA, INCORPORATED, d/b/a BURRITO JALISCO AND
BRIDGEVIEW BANK GROUP, TRUST 13137,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3036—**Joan Humphrey Lefkow**, *Judge.*

ARGUED FEBRUARY 13, 2009—DECIDED SEPTEMBER 4, 2009

Before KANNE, ROVNER and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Lela Ciciora slipped on ice
outside the Burrito Jalisco restaurant and sued the defen-
dants CCAA, Inc., doing business as Burrito Jalisco
("Burrito Jalisco"), and Bridgeview Bank Group, Trust
13137 ("Bridgeview"), for her resulting injuries. Bridge-
view owns the premises on which Ciciora fell, and Burrito
Jalisco leases the property from Bridgeview. According

to that lease, Bridgeview was responsible for the maintenance of the parking lot, driveway, and sidewalk, including snow and ice removal. The district court granted summary judgment to the defendants, and Ciciora appeals. We affirm.

The essential details of the incident are not in dispute. The incident occurred on December 13, 2005, outside Burrito Jalisco which is located near Chicago. The day prior, approximately 0.06 inches of precipitation had fallen in the area, but December 13 was overcast with no precipitation. Ciciora had ordered lunch at Burrito Jalisco, and left work to pick it up at approximately 10:30 a.m. She parked in the restaurant's parking lot, and exited her car, stepping onto the sidewalk. The sidewalk had been cleared of snow and the owner stated that a Burrito Jalisco employee, Juan Herrera, had salted the sidewalk at 9:00 a.m. that morning. Ciciora did not observe any ice on the sidewalk when she began walking on it. After only a few steps, and still about 20 steps from the door, Ciciora's foot slipped on ice and she fell, fracturing her ankle. Ciciora described the icy area as about 8 inches wide, and her son who later visited the scene described it as an icy area of about 2-3 square feet.

Ciciora relies on a number of legal theories to support her claim for damages. She asserts that Burrito Jalisco failed to provide a reasonably safe means of ingress into its property, and that it was negligent in the voluntary undertaking of snow and ice removal at its place of business. As to defendant Bridgeview, Ciciora argues that

Bridgeview was contractually obligated to remove snow and ice according to its lease with Burrito Jalisco, and that it negligently performed that duty and negligently delegated that duty to another party. We note that Ciciora also appeals the district court's refusal to strike Burrito Jalisco's summary judgment motion as untimely and improperly filed, but we find no abuse of discretion in that decision and turn to the propriety of the grant of summary judgment.

In order to state a cause of action for negligence, Ciciora must allege facts sufficient to demonstrate the existence of a duty, a breach of that duty, and injury that was proximately caused by that breach. *Flight v. American Community Management*, 893 N.E.2d 285, 288 (Ill. App. 1 Dist. 2008). The general rule is that in the absence of a contractual obligation, there is no general duty for a property owner to remove accumulations of snow or ice from areas used by invitees where the accumulation is a natural one and not one caused or aggravated by the property owner. *Judge-Zeit v. General Parking Corp.*, 875 N.E.2d 1209, 1216 (Ill. App. 1 Dist. 2007); *Strahs v. Tovar's Snowplowing, Inc.*, 812 N.E.2d 441, 445 (Ill. App. 1 Dist. 2004); *Madeo v. Tri-Land Properties, Inc.*, 606 N.E.2d 701, 702 (Ill. App. 2 Dist. 1992). That rule is a recognition that it is unrealistic to expect property owners to keep all areas free of snow and ice during the winter months in this climate. *Ordman v. Dacon Management Corp.*, 633 N.E.2d 1307, 1311-12 (Ill. App. 3 Dist. 1994). A duty may be recognized, however, where the defendant is contractually obligated to remove the snow and ice, or where the defendant voluntarily under-

takes to do so. *Judge-Zeit*, 875 N.E.2d at 1216; *Madeo*, 606 N.E.2d at 702.

Ciciora produced evidence that Burrito Jalisco voluntarily undertook the removal of snow and ice on a regular basis. In fact, the parties agree that there was an informal, unwritten agreement that Burrito Jalisco would shovel and salt the sidewalks and that a contractor hired by Bridgeview would plow the parking lot. A defendant who voluntarily undertakes the removal of snow and ice can be liable where the actions resulted in an unnatural accumulation of snow or ice, or added to an existing hazard, and caused injury to the plaintiff. *Judge-Zeit*, 875 N.E.2d at 1218-19; *Buffa v. Haideri*, 839 N.E.2d 618, 624 (Ill. App. 2 Dist. 2005). Ciciora has failed to allege any facts from which a jury could conclude that the fall resulted from an unnatural accumulation of snow or ice or the aggravation of an existing condition. The undisputed facts were that when Ciciora exited the vehicle, the lot had been plowed and the sidewalk had been shoveled. Although piles of snow existed at spots where it had been plowed and shoveled, Ciciora stated in her deposition that the sidewalk was clear and dry, and that no ice was visible when she began to walk on it. Ciciora's son also testified that when he arrived at the scene the sidewalk was dry to the extent that he could see the wet footprints of the emergency workers near the site of the fall. The owner of the restaurant testified that one of her employees, Juan Herrera, was responsible for shoveling and icing the sidewalk each morning, and that she observed him salting the sidewalk that morning. It was undisputed

that the concrete was level and in good shape, and that there was nothing in the condition of the concrete that contributed to the formation of ice. Ciciora in fact produces no evidence at all that the ice was anything other than a natural formation. She makes an isolated reference to awnings on the store that could drip ice onto the pavement, but provides no evidence as to where those awnings are located in reference to the ice upon which she fell. The deposition testimony in the case indicates that the awnings extended over the windows and covered the sidewalk slightly, such that only a person standing very near the building could be under them. Ciciora testified that she was 20 steps from the entrance of the building when she fell, and has presented no evidence that she was anywhere near the buildings or the awnings.

Illinois courts have rejected cases with far more evidence than that vague speculation. For instance, in *Madeo*, the plaintiff set forth evidence that the snow was piled at the high point of a sloped lot, and argued that the downward pitch of the lot would cause the melting snow to flow through the lot and refreeze. *Madeo*, 606 N.E.2d at 703. The court held that the plaintiff must either show a direct link between the snow piles and the ice that caused her to slip, or she must provide circumstantial evidence through an expert; merely inviting speculation as to the cause of the ice was insufficient to survive summary judgment. *Id.* at 705. Ciciora has far less evidence here. At most, she has identified a potential source of an unnatural accumulation—the awning—but has presented no evidence that ice actually accumu-

lated under that awning, or that the fall occurred anywhere in the vicinity of that awning. Because she has presented no evidence that the fall was a result of an unnatural accumulation of ice or an aggravation of an existing condition, the court properly granted summary judgment to the defendant on this claim.

Ciciora seeks to hold Bridgeview liable for the snow removal by virtue of the lease between Burrito Jalisco and Bridgeview under which Bridgeview agreed to be responsible for the maintenance of the parking lot, driveways and sidewalks, including snow and ice removal. Although Ciciora was not a party to that contract, that is not dispositive because the parties do not dispute that Illinois courts have allowed third-party invitees to rely on such contracts in establishing a duty. Even if Ciciora could rely on the lease to establish a duty in her negligence action, however, she had to demonstrate that Bridgeview failed to exercise reasonable care in fulfilling that duty and that the breach of duty proximately caused her injuries. Ciciora acknowledges that Bridgeview and Burrito Jalisco had an informal agreement under which Burrito Jalisco's employee would clear snow and ice from the sidewalk. She has provided no evidence that the Burrito Jalisco employee failed to exercise reasonable care in performing that duty. Although snow had fallen the previous day, the sidewalk was shoveled and clear of snow, and no ice was visible as Ciciora began walking on it. Ciciora and her son both acknowledge that the sidewalk was also dry with the exception of isolated icy patches. Ciciora stated that the patch of ice she slipped on was approximately

8 inches wide, and her son stated that it was approximately 2-3 square feet. By either account, then, the patch was a relatively small one on a sidewalk that appeared to have been cleared and that was dry. Ciciora essentially relies only on the mere existence of some ice on the sidewalk as evidence that reasonable care was not exercised, but Illinois courts have made clear that "[t]he mere presence of snow and ice does not demonstrate negligence." *Tressler v. Winfield Village Co-op., Inc.*, 481 N.E.2d 75, 77 (Ill. App. 4 Dist. 1985). Nothing in the amount or placement of snow and ice indicates a lack of reasonable care. In fact, the absence of visible ice, the dry condition of the sidewalk, the presence of plowed snow piles, and the size of the ice patch all contradict such a claim. Mere speculation is insufficient, *Judge-Zeit*, 875 N.E.2d at 1219, and the district court properly granted summary judgment to Bridgeview on that claim.

All that remains is the claim that Burrito Jalisco failed to maintain a safe means of ingress and egress. Illinois courts have made clear that "[t]he duty to provide a safe egress is not abrogated by the presence of the natural accumulation of snow and ice." *Judge-Zeit*, 875 N.E.2d at 1215. It includes the duty to properly illuminate the egress and to repair or warn of known dangerous conditions, *id.*, but there are no allegations that those duties were breached. By all accounts, the concrete was in good condition and presented no hazards, there is no allegation of inadequate lighting (and the injury occurred in daylight in any event), and there is no allegation that Burrito was aware of dangerous conditions. As we discussed earlier, there is no evidence

that the ice was anything other than a natural accumulation, and as the duty to maintain a safe ingress and egress does not include the removal of natural accumulations of ice, there is no viable claim here. The decision of the district court is AFFIRMED.