2025 IL App (1st) 241432-U

Fourth Division
Filed August 21, 2025

No. 1-24-1432

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| DAVID OWENS, | ) |
|     Plaintiff-Appellant, | ) |
| | ) Appeal from the |
| | ) Circuit Court of Cook County |
|   v. | ) |
| | ) No. 2023 L 012241 |
| APFS, LLC, a Delaware Limited Liability Company, | ) |
| PILOT HOLDINGS, LLC, a Delaware Limited | ) The Honorable John L. Curry, Jr., |
| Liability Company, and THOMAS MORAN, | ) Judge, presiding. |
|     Defendants-Appellees. | ) |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of plaintiff's claims against defendant corporation was affirmed in part and reversed in part, and the cause was remanded, where (1) the court erroneously dismissed plaintiff's breach-of-contract claims based on a premature factual determination; and (2) the court correctly found that the complaint, as pleaded, did not state causes of action for breach of the implied covenant of good faith and fair dealing; but (3) the court abused its discretion by dismissing those claims with prejudice. The dismissal against the defendants who were not parties to the agreements is affirmed.

¶ 2    The plaintiff, David Owens, appeals from the dismissal, with prejudice, of four counts of his complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). Owens's complaint asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing. For the reasons outlined below, we affirm in part and reverse in part.

¶ 3                                I.  BACKGROUND

¶ 4        In May 2019, Owens was hired as Director of Campus Recruitment by APFS, LLC, a staffing and recruiting company. APFS is a subsidiary of Pilot Holdings, LLC. Owens was an at-will employee. Owens was promoted and his employment continued to be at-will. In May 2022 and May 2023, Owens entered into option agreements (the "Agreements") with Pilot granting him options to purchase units of Pilot. The 2022 option agreement granted Owens options to purchase 400 Class B units of ownership, and the 2023 option agreement granted Owens options to purchase 750 Class B units of ownership. The Agreements are identical, except for the number of options and the purchase price.

¶ 5        Paragraph 2(d)(iii) of the Agreements provides:

> "If the Optionee voluntarily terminates the Optionee's employment with the Company or a Subsidiary, or the Company or such Subsidiary terminates the Optionee's employment without Cause, the option shall automatically, without any further action by the Company or a Subsidiary, terminate on the date of such Termination of Employment and no Class B Units may thereafter be acquired under the Option; provided however, that the Chief Executive Officer of the Company may in his sole discretion permit the Optionee to exercise the Option, to the extent exercisable in accordance with Section 2(b) hereof as the date of such Termination of Employment, during the period of ninety (90) days from the date of such Termination of Employment or of the stated period of the Option, whichever period is shorter; provided, further however, if the Chief Executive Officer, at the time of such determination whether to permit the Optionee to exercise the Option, is not the same as such person in the position of Chief Executive Officer as of the date of this Agreement, then the determination herein will be at the discretion of the Board."

¶ 6    Paragraph 2(d)(v) provides:

"If the Optionee's employment is terminated by the Company or a Subsidiary for Cause, the Option shall automatically without further action required by the Company or a Subsidiary, terminate on the date of such Termination of Employment and no Class B Units may thereafter be purchased under the Option."

¶ 7    Paragraph 2(f)(i) provides:

"Cause" shall mean the Company or an Affiliate having "Cause" to terminate an Optionee's employment, as defined in any employment or similar agreement between the Optionee and the Company or an Affiliate; provided that, in the absence of an employment or similar agreement containing such a definition, the Company or an Affiliate shall have "Cause" to terminate the Optionee's employment upon: (A) the commission of the Optionee of, or the Optionee's conviction of, or pleading guilty or nolo contendere to, any felony or any act or omissions involving fraud, dishonesty or moral turpitude; (B) any act or omission by the Optionee (including, without limitation, violations of applicable laws or regulations, acts of disloyalty to the Company or any of its Affiliates, or professional misconduct) that results in, or would reasonably be expected to result in, material harm to the Company's or any of its Affiliates' business or reputation; (C) the failure by the Optionee to perform his or her material duties or comply with the lawful instructions of the Board; (D) the failure by the Optionee to comply with the Company's written policies, as may be in existence from time to time and as may be modified from time to time; or (E) the material breach, non-performance or non-observance or any of the terms of the LLC Agreement or any other agreement to which the Optionee and the

Company or any of its Affiliates are parties, by the Optionee; provided that the Optionee fails to cure such event specified in items (B), (C), (D) or (E) of this section 2(f)(i), if such event is curable, within ten (10) business days after the receipt of notice of such Cause, and provided further, that if Optionee is subject to the same event of Cause more than once, Optionee shall not be permitted the opportunity to cure any such same event of Cause during the twelve (12) month period following the initial same event giving rise to such Cause."

¶ 8 Finally, Section 2 (j) provides:

"Neither the Option nor any terms contained in this Agreement shall confer upon the Optionee any express or implied right to be retained in the service of the Company or an Affiliate for any period or at all, not restrict in any way the right of the Company or any Affiliate, which right is hereby expressly reserved, to terminate the Optionee's employment at any time with or without Cause, subject to the Optionee's employment agreement, if any. The Optionee acknowledges and agrees that any right to the Option is earned only by continuing as an employee of the Company and the Affiliates, or satisfaction of any other applicable terms and conditions contained in this Agreement and the Plan, and not through the act of being hired, being granted the Option or acquiring Company units hereunder."

¶ 9 The complaint alleged that, on October 2, 2023, Owens was informed that his position was being eliminated and that he was being terminated for cause based on sign-on bonuses being paid to new APFS hires on September 29, 2023, which Thomas Moran, APFS's Chief Executive Officer, had decided should be revoked. The termination was effective immediately. Nine days later, Owens attempted to exercise his options from the Agreements. Pilot declined to allow Owens the exercise.

¶ 10    Owens filed a complaint asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing against APFS, Pilot Holdings, and Moran. Owens alleged that defendants breached the Agreements by terminating him for cause without providing him with notice and opportunity to cure his alleged breach of duties. Owens also alleged that defendants breached the agreements by terminating him without cause as defined in paragraph 2(f)(i). Prior to his termination, Owens received good evaluations, had never been placed on a performance improvement plan, and had not received any warning that he failed to perform his duties. Further, at the October 2, 2023 meeting, Owens alleges he was initially informed his position was being "eliminated." Additionally, he alleged that defendants breached the implied obligation of good faith and fair dealing by terminating him for cause and not allowing him to exercise his options under the Agreements, "thus depriving Owens of clearly identifiable compensation related to services which Owens already rendered." Owens also asserted against Moran a claim for defamation *per se* that is not at issue in this appeal.

¶ 11    Defendants filed a joint motion to dismiss. APFS and Moran argued that they could not be held liable under Owens's contractual theories because they were not parties to the Agreements. Pilot argued that Owens failed to allege a breach of contract because, under the agreements, the termination of Owens's employment automatically terminated his options. It also argued that Owens could not sustain an independent cause of action for breach of the implied obligation of good faith and fair dealing.

¶ 12    The circuit court granted the motion and dismissed Owens's claims for breach of contract and breach of the covenant of good faith and fair dealing with prejudice. It found that APFS and Moran were not parties to the Agreements. It further found that per the Agreements, Owens was an at-will employee, who could be terminated with or without cause. Since APFS terminated Owens for cause, he was not entitled to exercise his options under the Agreements. Additionally, based upon its ruling that Owens had been terminated for cause, it found there was no basis for finding Moran had abused his discretion by not awarding the options to Owens. The circuit court did not dismiss Owens's claim for defamation *per se*, finding it was sufficiently pled.

¶ 13   The remaining count of Owens's complaint was voluntarily dismissed so he could pursue this appeal.

¶ 14                                    II.  ANALYSIS

¶ 15   On appeal, Owens argues that the circuit court erred by finding that counts 1 through 4 of his complaint failed to state a claim and by designating the dismissal as being with prejudice. A section 2-615 motion to dismiss "tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 18. The court must "accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Marshall v. Burger King, Corp.*, 222 Ill. 2d 422, 429 (2006). Dismissal is proper when it is apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Id*. Our review of a dismissal pursuant to section 2-615 is *de novo*. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 15. However, we review the court's decision to dismiss a complaint with prejudice for an abuse of discretion. *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008). A complaint should be dismissed with prejudice only if it is apparent that no set of facts would entitle plaintiff to recovery. *Id.* Where a claim can be stated, it is an abuse of discretion to dismiss with prejudice. *Id.*

¶ 16   We note that, although the notice of appeal challenged the circuit court's dismissal of those claims as to all three defendants, his arguments on appeal are all directed to the circuit court's dismissal of his claims against Pilot Holdings. He does not challenge the circuit court's determination that he failed to state claims against APFS and Moran, who were not parties to the Agreements, thereby forfeiting any argument he had that the court erred by dismissing the claims against those defendants. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We therefore affirm the dismissal of counts 1 through 4 of the complaint against APFS and Moran.

¶ 17                                  A.  Option Agreements

¶ 18        First, Owens argues the circuit court misapplied the standard governing section 2-615 motions to dismiss. Owens asserts his complaint sets out his history of exceptional performance, the contradictory grounds he was given for his termination, and the basis of his allegation that he was terminated without cause as defined in the Agreements.

¶ 19        The rules of contract interpretation are well settled, and the primary objective in construing a contract is to give effect to the parties' intent. *Gallagher v. Lenart*, 2008 Ill. 2d 208, 232 (2007). A court must initially look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* at 233. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.*

¶ 20        The language of the Agreements sets forth that Owens's right to exercise the options ends upon his termination for cause or without cause. If terminated, with cause or without cause, Owen's right to exercise his options was terminated on the date of his termination of employment. However, if terminated without cause, the CEO may, at his sole discretion, allow Owens to exercise his options.

¶ 21        Owens argues that the language of the Agreements gave him an opportunity to cure the defect of his employment if he was terminated for cause. Owens further argues that had Pilot given him the opportunity to cure, he could have exercised his options during the 10-day cure period. According to Owens, "[s]ection 2(d)(v) does not provide that the options terminate on the date of notice of termination for Cause. Rather, it provides that such termination occurs on the date of termination of employment, which would be—in the absence of cure by the employee—ten business days after notice of termination for Cause was delivered." In his complaint, Owens alleged he was informed during the October 2, 2023 meeting that his role was being eliminated and he was being terminated for cause, effective immediately. With regards to his claims for breach

of contract, Owens alleged he was terminated without cause, and alternatively, Owens claimed he was terminated with cause and defendants did not provide him with notice and the opportunity to cure his alleged breaches of duties. Whether Owens was fired for cause or without cause is a question of fact which cannot be decided by the circuit court pursuant to a section 2-615 dismissal. Therefore, the dismissal of Owens's claims for breach of contract were in error.

¶ 22                    B. Breach of the Implied Covenant of Good Faith and Fair Dealing

¶ 23        Owens contends the complaint adequately alleged facts for a violation of the implied obligation of good faith and fair dealing by alleging that APFS refused to exercise its discretion to permit Owens to exercise his options under the Agreements and deprived him of compensation for the services he rendered.

¶ 24        "In Illinois, there is a duty of good faith and fair dealing included in every contract as a matter of law." *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 175 (1997). To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must plead the existence of contractual discretion. *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165 (2004). "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.' " *Id.* (quoting *Resolution Trust Corp. v. Holtzmann*, 248 Ill. App. 3d 105, 112 (1986)). "Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995).

¶ 25        Owens relies on *McCleary*. In *McCleary*, the plaintiff filed a complaint against his former employer seeking payment of an earned bonus. *McCleary*, 2015 IL App (1st) 141287, ¶ 3. To qualify for the bonus under the plan, the plaintiff had to satisfy certain factors which included "achievement of corporate and practice group financial goals, a participant's performance ratings,

compliance with the terms of the plan, and execution of a trade secret agreement." *Id.* ¶ 5. Once a bonus pool was created, annual awards were made at the plan administrator's sole discretion, and bonus awards could be "adjusted or denied for any reason." *Id.* ¶ 6. At the time of the plaintiff's termination, he was informed his termination did not disqualify him from participation in the plan and that, if a bonus pool was created, he would be included. *Id.* ¶ 8. A bonus pool was created and other similarly situated employees received performance bonuses, but the plaintiff was not awarded a performance bonus under the plan. *Id.* The plaintiff sought internal review of the defendant's decision. *Id.* ¶ 9. The defendant responded it had the absolute discretion to determine a bonus award and determined the plaintiff would not receive a bonus payment. *Id.*

¶ 26 On appeal, the plaintiff argued the circuit court erred in dismissing his complaint as the defendant's discretion was restrained by the covenant of good faith and fair dealing. *Id.* ¶ 18. The plaintiff reasonably expected that if a bonus pool was created, he would be included. *Id.* ¶ 22. He did not receive a bonus payment, while similarly situated participants did. *Id.* The plaintiff claimed "that defendant abused its discretion and took advantage of him by arbitrarily changing the length of service during the plan year to six months, rather than the stated three-month service, and he did not reasonably contemplate this when he entered into the Plan." *Id.*

¶ 27 We reversed the circuit court's dismissal under section 2-615 and found that "[w]here a plaintiff has pled that he had a reasonable expectation to a bonus from a defendant that abused its broad contractual discretion by arbitrarily withholding the bonus in a manner not reasonably anticipated by the parties at the time of contract formation, a valid cause of action has been sufficiently pled to withstand a section 2–615 motion to dismiss." *McCleary*, 2015 IL App (1st) 141287, ¶ 26 (citing *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965 (2010)).

¶ 28 At issue here is whether Owens has sufficiently pled a cause of action for breach of the covenant of good faith and fair dealing, not whether he has proven this claim. *McCleary*, 2015 IL App (1st) 141287, ¶¶ 22, 26 ("At this stage of the litigation, we are only concerned with matters of sufficient pleading, not matters of proof."). Unlike *McCleary*, Owens did not have a reasonable expectation to exercise his options after his termination. With regards to his claims for breach of

the implied covenant of good faith and fair dealing, in his complaint, Owens alleged that he was terminated for cause without notice and the opportunity to cure on October 2, 2023. Owens claims Pilot did not exercise its discretion properly by not allowing Owens to exercise his options under the Agreements. While Owens has pled the existence of contractual discretion, paragraph 2(d)(iii) of the Agreements allows Pilot to exercise its discretion to permit Owens to exercise his options if his employment was terminated without cause. Here, in his claims for breach of the implied covenant of good faith and fair dealing, Owens alleged he was fired for cause, meaning paragraph 2(d)(iii) does not apply. Further, Owens did not plead facts that alleged that Pilot "abused its broad contractual discretion by arbitrarily withholding the bonus in a manner not reasonably anticipated by the parties at the time of contract formation." *McCleary*, 2015 IL App (1st) 141287, ¶ 26. We find that he has not sufficiently pled facts to sustain causes of action for breach of the implied covenant of good faith and fair dealing.

¶ 29                                   C.  Dismissal With Prejudice

¶ 30        Finally, as noted above, a dismissal under section 2-615 should only be with prejudice where it is apparent no set of facts would entitle the plaintiff to recovery. *Bruss*, 385 Ill. App. 3d at 405. We have concluded that, as pled, the complaint did not contain sufficient allegations to state causes of action for breach of the implied covenant of good faith and fair dealing. However, Owens was not given the opportunity to amend his complaint to attempt to remedy any deficiencies. "If a plaintiff can state a cause of action by amending his complaint, dismissal with prejudice should not be granted." *Uskup v. Johnson*, 2020 IL App (1st) 200330, ¶ 36 (citing *Buffa v. Haideri*, 362 Ill. App. 3d 532, 540 (2005)). Accordingly, while we affirm the circuit court's dismissal of those claims, we reverse the circuit court's designation of the dismissal as being "with prejudice." *Id.*

¶ 31                                      III.  CONCLUSION

¶ 32        For the foregoing reasons, we hold that the circuit court erroneously dismissed counts 1 and 2 against Pilot Holdings for breach of contract. We also hold that the court properly dismissed the

claims that Pilot Holdings breached the implied covenant of good faith and fair dealing but erred by doing so with prejudice.

¶ 33    Accordingly, with respect to defendant Pilot Holdings, the dismissal with prejudice as to counts 1 and 2 is reversed, and the judgment as to counts 3 and 4 is reversed insofar as those counts were dismissed with prejudice but otherwise affirmed. With respect to defendants APFS and Moran, the circuit court's judgment is affirmed. The cause is remanded to the circuit court.

¶ 34    Affirmed in part and reversed in part; remanded.