ANDREW JOHNSON, Plaintiff-Appellee, v. ABBOTT LABORATORIES, INC., Defendant-Appellant.

Second District   No. 2—92—0085

Opinion filed December 21, 1992.

Michael J. Cummins, of Cummins & Mardoian, of Lake Forest, for appellant.

Robert N. Goshgarian, of Goshgarian & Gibson, of Waukegan, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Andrew Johnson, filed an amended complaint in the circuit court of Lake County naming as defendant Abbott Laboratories, Inc., and alleging negligence. Following a bench trial, judgment was entered in favor of plaintiff in the amount of $389,288.95, and defendant appealed.

On appeal, defendant raises the following issues: (1) whether the trial court abused its discretion in denying defendant's motion for leave to amend its answer to add an affirmative defense and to file a motion to dismiss based on the affirmative defense; (2) whether the verdict was against the manifest weight of the evidence; and (3) whether plaintiff was more than 50% contributorily negligent and thus barred from recovering from defendant.

Plaintiff was injured on February 19, 1990. He filed his original complaint on March 30, 1990. That complaint alleged that defendant was negligent in that it:

"a. failed to provide sufficient and adequate lighting along the route which the Plaintiff used to get to and from the garage where his truck was parked;

b. failed to provide the Plaintiff with a sidewalk or walkway from the parking lot to the garage where his truck was parked;

c. failed to illuminate the area upon which the Plaintiff was required to walk to get from the parking lot to the garage where his truck was parked; [and]

   d. failed to provide the Plaintiff with a safe means of getting from the Parking lot where he was required to park his car to the garage in which his truck was parked."

Defendant, on May 8, 1990, filed an answer in which it denied the above allegations. It raised no affirmative defenses at that time.

Following several continuances, the cause was set for trial on December 16, 1991. On that date, plaintiff filed its amended complaint which alleged that defendant committed the following negligent acts:

"a. Failed to provide sufficient and adequate lighting along the route which the plaintiff used to get to and from the garage where his truck was parked;

b. Failed to provide the plaintiff with a sidewalk or walkway from the parking lot to the garage where his truck was parked;

c. Failed to illuminate the area upon which the plaintiff was required to walk to get from the parking lot to the garage where his truck was parked; [and]

d. Failed to provide the plaintiff with a safe means of walking from the parking lot where he parked his vehicle to the loading dock where he worked by requiring him to walk down a steep, unlit, rocky, snow-covered hill."

Also on December 16, 1991, defendant filed an amended answer in which it denied each of the negligence allegations. For the first time, defendant also raised two affirmative defenses. The first asserted that plaintiff was a "loaned employee" and that as such he was barred by the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(a)) from bringing a common-law tort action against defendant, the alleged "borrowing employer." The second affirmative defense alleged that "[t]he Contributory fault on the part of the Plaintiff, Andrew Johnson, [was] more than 50% of the proximate cause of the injury or damage." The affirmative defense further alleged that plaintiff was "barred from recovering damages." The prayer for relief asked the court to dismiss plaintiff's complaint. Defendant also filed a motion for leave to file a motion to dismiss on December 16 in which it sought to have plaintiff's

complaint dismissed pursuant to its workers' compensation affirmative defense.

The trial court denied defendant's motion for leave to file its motion to dismiss, denied its motion to file a worker's compensation affirmative defense, and granted its motion to file its affirmative defense of contributory negligence. The written order, prepared by defense counsel, characterizes the contributory negligence defense as "more than 50% contributory negligence."

The following additional facts were adduced at trial. Plaintiff was employed by Leaseway Corporation on the date of the occurrence. He was assigned to drive a truck from loading dock number 209 located in building AP-5 at defendant's Abbott Park facility. He had worked out of dock 209 for about 18 years prior to the incident.

For approximately a year and a half prior to February 19, 1990, a Monday, he had arrived at work on Monday mornings between 3 and 4 a.m. As he entered Abbott Park he would first stop at a guard shack and check in. He would then drive to a parking lot adjacent to AP-5 and dock 209. He had parked in that particular lot for about seven years prior to the accident.

After parking his car in the lot, plaintiff would walk down a hillside to the turnaround pad located next to dock 209. He would then enter dock 209 through two overhead doors. Those doors would be opened by a security officer upon plaintiff's arrival at the facility.

Sometime during late summer or early fall of 1989, rocks were placed into a sand base along a portion of the hillside separating the parking lot from the turnaround pad of dock 209. According to the plaintiff, there had been some artificial lighting in the area of the hillside but that lighting had been removed at or before the time the rocks were put in. During the winter months, it was dark between 3 and 4 a.m. when plaintiff arrived at the facility.

Plaintiff testified that he would usually walk down the incline on an angle as that was the shortest route from his car to the dock doors. He also felt this was the shortest, easiest and safest route. His route down the incline would vary from day to day because of changing weather conditions such as ice and snow. During the winter of 1989 and 1990, Abbott personnel would plow snow so that it was piled up along the curb at both the top and bottom of the incline. Plaintiff would have to climb over a snowbank at the top and also one at the bottom.

On the morning of the incident, the weather was cold, and snow was on the ground. There was a three- or four-foot high pile of snow around the curb at the top of the hillside and at the bottom. After exiting his car, he walked to the edge of the hill. Because of the snow, plaintiff could not determine where the stones or grass were located. There was no lighting illuminating the hillside other than the curb at the top which was lighted by the parking lot lights. The snow was approximately 12 or 13 inches deep on the hillside.

As he faced down the hillside, there was a snow fence that ran from his left all the way to the wall of AP-5. To his right was a clump of trees which had branches that hung down to about four feet off the ground. Further to the right of the trees was another snow fence that ran the entire length of the road which leads from the turnaround pad to the perimeter roadway. According to plaintiff, he could not have walked down the incline to his right because of the clump of trees and snow fence and could not have walked to the left because the bank was steep, there were two semitrailers parked at the bottom, and the snow fence ran to the wall of AP-5. Plaintiff admitted that he did not wave for a ride to the security officer responsible for his access into AP-5. The officer had previously given him two unsolicited rides during rainy weather.

As he walked down the incline on the morning of the incident, plaintiff was following steps previously left in the snow. After taking four or five steps down the hill, he turned his foot on either a stone or piece of ice under the snow. He felt something turn under the snow. He fell to his knee and broke his ankle. He had previously noticed loose stones in the sand. On the morning of the accident, he could not tell whether he was walking on stones or grass because he could not discern where the rocks ended and the grass began. He admitted, however, that he could tell where the stones and grass were because of the location of the snow fence, which did not run over the stones. He also stated on cross-examination that he knew he was walking on snow-covered stones. He could not tell if any of the stones were loose that morning due to the snow cover. Plaintiff admitted that he could have walked about a half mile on cleared roadway to reach the AP-5 dock without going down the incline. Testimony established this route would have taken anywhere from 5 to 15 minutes to walk.

Several witnesses testified to complaints about the incline as a point of ingress and egress between the parking lot and the turnaround pad. Plaintiff complained several times to Richard Munson,

an employee of defendant, about the snow in wintertime. He also complained after the stones were installed and asked why stairs were not put in. Donald Cocal, another Leaseway driver assigned to Abbott Park, complained at the time the rocks were put in place to Larry Niemi, the supervisor in charge of dock 209, as to why a walkway was not installed.

Wilbur Painter, another Leaseway driver, complained to Richard Munson and Steve Wilson, supervisors at Abbott Park, about the installation of the rocks on the hillside. At about the same time, he also complained to Niemi that Abbott was making it difficult for the truck drivers to get down to work. Richard Munson, a dispatcher at Abbott Park during the fall of 1989 and winter of 1990, had received oral complaints from Painter and Cocal regarding how difficult it was to come down the hill and how much more difficult it would be with the rocks in place. Munson conveyed the complaints to his replacement, Wilson, as well as to Niemi. Larry Niemi denied receiving any complaints from Cocal, Munson, Wilson or plaintiff concerning access to the loading docks at AP-5. Steve Wilson also received complaints from a group of Leaseway truckers that the stones hindered their ability to get from the lot to the turnaround. Wilson agreed with the truckers and conveyed these complaints to Niemi.

Wilson added that there was no specified access to the turnaround pad. It was more difficult to get to the turnaround pad in wintertime. Wilson estimated the incline at the point plaintiff fell to be an 8- to 10-foot vertical drop.

In entering judgment in plaintiff's favor in the amount of $389,288.25, the trial court found that defendant knew of the use by Leaseway truckers of the hillside as a point of ingress and egress. The court further found that defendant had a duty to maintain the hillside in a reasonably safe condition as a means of ingress and egress and breached that duty because of the slope, the trees, the snow fence and the nonuniform surface of grass and rocks. The court also found that the half-mile detour was not designated by defendant as a proper route and was never used as such in 16 years. Likewise, the court found the other possible alternate routes down the hillside not to have been designated as ingress and egress points and not to have been maintained in a reasonably safe manner. The court did not mention in its comments any negligence on the part of plaintiff.

■ Defendant's first appellate contention is that the trial court abused its discretion in denying it leave to amend its answer on the

day of trial to add the affirmative defense premised upon the Workers' Compensation Act. Section 2—616(a) of the Civil Practice Law provides:

"At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." Ill. Rev. Stat. 1989, ch. 110, par. 2—616(a).

A trial court has broad discretion to allow amendments and supplements to pleadings. (*Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 960.) The denial of a motion to amend will not be regarded as prejudicial error unless there has been a manifest abuse of such discretion. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 161.) Whether discretion was properly exercised is determined by such factors as whether the amendment furthers the ends of justice, the ultimate efficacy of the claim, the previous opportunities to assert the claim, the timeliness of the amendment, and whether other parties are prejudiced or surprised by the amendment. (*Healy*, 216 Ill. App. 3d at 960.) The courts also consider whether the amendment concerns matters known to the pleader at the time the original pleading was filed and whether good reason for not filing is offered by the pleader. *Healy*, 216 Ill. App. 3d at 960.

■ In applying the various factors to this case, we hold the trial court did not abuse its discretion in denying defendant leave to file its affirmative defense. The defense was premised on the theory that plaintiff was a loaned servant and therefore his exclusive remedy was pursuant to the Workers' Compensation Act. The lawsuit was filed more than a year and a half before trial commenced. There is no apparent reason, and defendant suggests none, why defendant could not have presented this defense earlier in the litigation. It would seem that defendant would have had ready access to much of the information surrounding its relationship to plaintiff's employer and plaintiff's relationship to defendant, *vis-a-vis* his employment status. Furthermore, defendant offers no reason why it did not attempt to develop this defense theory through discovery. Even if defendant did so, we fail to see a reason why defendant

chose not to raise the defense until the day of the trial. There is nothing about plaintiff's amended complaint which would explain defendant's last-minute presentation of this defense. The defense was equally applicable to both the original complaint and the amended complaint.

There is also an element of surprise inherent in this situation. Because the issue of whether plaintiff was a loaned servant could have been introduced into the case at an earlier date, plaintiff may have been lulled into believing it would not become an issue.

We are unable to determine from an examination of the record the ultimate efficacy of defendant's claim that plaintiff was a loaned servant. After considering all of the various factors, we conclude the trial court did not abuse its discretion in denying defendant leave to file this affirmative defense.

The next issue is whether the trial court's verdict was against the manifest weight of the evidence. Specifically, defendant maintains that plaintiff had alternative routes available to access the turnaround pad and area of AP-5. Defendant further contends that defendant was not liable for its failure to illuminate the incline or warn of the dangerous condition as plaintiff was aware of the dangers because of his prior use of the incline.

■ Property owners have a duty to provide a reasonably safe means of ingress and egress from their places of business, and this duty is not abrogated by the presence of a natural accumulation of ice, snow or water. (*Branson v. R & L Investment, Inc.* (1990), 196 Ill. App. 3d 1088, 1092.) When a means of ingress and egress is prescribed for invitees, it is the duty of the property owner to illuminate properly, give adequate warning of, or cause to be repaired a known, dangerous condition. (*Branson*, 196 Ill. App. 3d at 1092; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 87.) Conclusions of the court are entitled to the same weight as a jury verdict and will not be upset unless manifestly against the weight of the evidence. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 264.) A verdict is against the manifest weight of the evidence if it is palpably erroneous and wholly unwarranted or it appears to be arbitrary, unreasonable and not based upon the evidence. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Jepsen* (1988), 172 Ill. App. 3d 662, 666.

■ The evidence here disclosed that plaintiff, along with other Leaseway truckers, had for several years used the hillside as a point of ingress and egress to work and that defendant was aware

of that fact. The evidence further demonstrated that there was no reasonable alternate route available to plaintiff and the other Leaseway employees. The trial court obviously concluded that walking a half mile out of the way or hailing a security officer for a ride was not a reasonable alternative means of ingress and egress. We must agree that walking a half mile in the wintertime or during inclement weather is hardly a reasonable means of getting to work, particularly where the plaintiff was expected to park his vehicle a short distance from his work destination. Similarly, it is unreasonable to expect plaintiff to obtain the assistance of the security officer where there was no evidence that it was among the officer's duties to transport Leaseway drivers between the parking lot and the dock area or that the security officer would always be available for this purpose. Any use of this latter alternative by plaintiff in the past appears to have been a purely gratuitous gesture on the part of the security officer.

In light of the fact that plaintiff had no other reasonable means to get to his work place, we believe the evidence supports a finding of liability under these circumstances. Plaintiff was essentially required to negotiate a substantial incline covered with approximately 12 inches of snow. Beneath the snow lay stones, some of which had come loose in the past. The hillside was not illuminated except at the top near the curb. Snow had been plowed three to four feet high at both the top and bottom of the hill. In light of the condition of the hillside on the morning of plaintiff's fall, it was not against the manifest weight of the evidence for the trial court to have concluded that defendant breached its duty to maintain the hillside in a reasonably safe condition as a means of ingress and egress for the plaintiff and the other Leaseway drivers.

■ Defendant's final contention is that plaintiff was more than 50% contributorily negligent and, therefore, plaintiff was barred from recovering. At the outset, we note that defendant did not raise in the trial court the issue of plaintiff's contributory negligence in an effort to reduce plaintiff's recovery by *any* level of contributory fault, but, rather, sought by way of affirmative defense to bar completely plaintiff's claim by alleging only that plaintiff was more than 50% at fault. Because the issue of plaintiff's contributory negligence of 50% or less was not raised in the trial court, it cannot be raised for the first time on appeal. See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.

Furthermore, on appeal defendant primarily argues in its brief that plaintiff's "contributory fault constituted more than 50 percent

of the proximate cause of his injury and that he should be barred from recovering damages" and that the verdict "is barred by the doctrine of contributory fault." Defendant does mention in one sentence at the end of the argument portion of its brief that should we disagree with its contention that plaintiff was more than 50% negligent, then we should determine that plaintiff was at fault to some lesser percent and reduce his damages accordingly. Even had this issue not been waived for failure to present it to the trial court, it is waived here because there is no argument in support of such a conclusion. (See 134 Ill. 2d R. 341(e)(7).) Accordingly, we will review only the question of whether the evidence supports the trial court's finding that plaintiff was not more than 50% contributorily negligent.

■ A plaintiff is guilty of contributory negligence when he fails to exercise that degree of care which a reasonably prudent person would have used for his own safety under like conditions, and which failure is the proximate cause of his injury. (*Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 955.) A finding on the issue of comparative negligence will not be set aide on review absent a determination that the verdict is against the manifest weight of the evidence. *Healy*, 216 Ill. App. 3d at 955.

The evidence here supports the trial court's apparent finding that plaintiff was not more than 50% at fault. There is insufficient evidence that plaintiff, in attempting to traverse the dark, snow-covered hillside, failed to exercise reasonable care to the extent that he was more than 50% at fault for his injury. As we discussed above, he had no other reasonable alternative but to walk down the hillside if he wanted to get to work. Under these circumstances, his decision to walk down the slope does not constitute fault sufficient to bar his recovery. Nor is there sufficient evidence as to his being negligent in the manner in which he attempted to descend the slope so as to prevent his recovering under principles of comparative fault. Thus, the verdict as to plaintiff's contributory negligence was not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

INGLIS, P.J., and UNVERZAGT, J., concur.