THIRD DIVISION
SEPTEMBER 26, 2007

1-06-0181

| | | |
|---|---|---|
| JANINE JUDGE-ZEIT, a/k/a Janine Judge, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL PARKING CORPORATION, | ) | No. 03 L 2133 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| (Interparking, Inc., | ) | Honorable |
| | ) | Susan Zwick, |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff Janine Judge-Zeit (plaintiff) appeals from an order of the circuit court of Cook County granting summary judgment in favor of the defendant, InterPark, Inc. (incorrectly sued as Interparking, Inc.) and denying the plaintiff's motion for leave to amend her complaint and motion to strike the defendant's climatic data. This appeal only pertains to the defendant-appellee InterPark, Inc. (InterPark). General Parking Corporation was dismissed from this lawsuit with prejudice by agreement of the parties. On appeal, the plaintiff argues that the trial court erred by: (1) holding that InterPark owed no duty to the plaintiff to provide a safe means of egress from the parking garage; (2) holding that InterPark did not have a contractually created duty to the plaintiff to remove natural accumulations of snow from the employee parking structure; (3) holding there was no genuine issue of material fact as to whether InterPark caused an unnatural accumulation of snow and ice; (4) holding there was no genuine issue of material fact as to whether InterPark negligently plowed the natural accumulations of snow; (5) denying the plaintiff's motion to amend her complaint; and (6)

denying the plaintiff's motion to strike InterPark's exhibit of climate reports. For the following reasons, we affirm the trial court.

## BACKGROUND

The following factual background is adduced from the record.

At the time of the lawsuit, the plaintiff was an employee of the University of Chicago Hospital (UCH) and purchased employee parking privileges in the Duchossis Center Parking Garage (DCAM) on the hospital's campus. DCAM is a five-floor parking facility with an open roof on the fifth floor. All of the UCH parking facilities, including DCAM, are operated and managed by InterPark, the defendant. InterPark had a contractual agreement with UCH to manage and operate its parking facilities. No language in the UCH/InterPark contract expressly provided that InterPark was responsible for snow removal. However, snow removal is listed under the schedule of reimbursable operating expenses and testimony established that InterPark routinely performed snow removal as part of its service through subcontracting with another vendor. InterPark entered into a contract with Rick's Automotive (Rick's) to remove snow from all the UCH parking facilities. The contract provided that DCAM was to be plowed by 8 a.m. on days when snow removal was required and that some of the parking facilities should be plowed with a metal blade. DCAM was not one of the facilities required to be plowed with a metal blade.

On February 22, 2001, upon arriving for work, the plaintiff parked her car at approximately 8:50 a.m. on the fifth level of DCAM. Since the fifth level was open to the elements, snow covered the floor of the parking structure from a late night and early morning snowfall. When the plaintiff exited her vehicle, the snow plow had just begun to clear the fifth level of the parking structure.

2

Rick's employee Rita Pacyna began to plow the southwest corner of the structure with rubber blades. According to the plaintiff's testimony, she began walking on the unplowed southeast corner of the garage toward the elevator when she slipped and fell onto her lower back and hip. Additionally, the plaintiff's testimony established the following facts. She was four feet west of two posts near the elevator when she fell. As a result of her fall, she sustained a herniated disc at L5-S1, requiring microdiscectomy surgery. After her fall, InterPark manager Jamie Martinez apologized to her and commented that the person responsible for plowing the garage had arrived late that morning.

On February 19, 2003, the plaintiff filed a compliant against InterPark in the circuit court of Cook County for damages resulting from her fall. The plaintiff alleged that InterPark: (1) failed to maintain the parking garage in a reasonably safe manner; (2) failed to remove snow that accumulated on the fifth floor after undertaking the duty to do so as manager of the facility; (3) allowed an unnatural accumulation of ice and snow on the egress to the elevators; and (4) carelessly and negligently inspected, controlled and maintained the parking garage.

During the discovery process, depositions were taken from the plaintiff, InterPark manager Jaime Martinez, Rick's employee Rita Pacyna, and InterPark operations manager Bill Plavsic. At the completion of discovery, InterPark filed its motion for summary judgment.

InterPark argued that summary judgment was proper because there was no genuine issue of material fact. In support of its motion, InterPark offered the following: a certified weather report of the weather conditions on February 22, 2001, the date of the plaintiff's fall; the contract between the UCH and InterPark; the snow removal proposal between Rick's automotive and InterPark; and the deposition testimony of the plaintiff and InterPark manager Jamie Martinez.

InterPark argued that it had no contractual duty to remove snow from DCAM. It pointed out that the UCH/InterPark contract does not expressly impose a duty on InterPark to remove snow and only mentions snow removal in the schedule of reimbursable operating expenses. InterPark also argued that under Illinois common law, the InterPark/Rick's proposal for snow removal did not create an affirmative duty to remove snow from DCAM. Although Jamie Martinez testified that Rick's should have plowed DCAM by 8 a.m., InterPark asserted that its failure to plow by 8 a.m. did not breach a duty to the plaintiff. Additionally, InterPark argued that the plaintiff offered no evidence that an unnatural accumulation of snow contributed to her fall. InterPark highlighted that the plaintiff testified that she fell on an unplowed section of the garage. According to a certified weather report, the accumulated snow fall on the morning of February 22, 2001, was four-tenths of an inch and snow was still falling at the time of the plaintiff's fall. InterPark claimed in its motion for summary judgment that the plaintiff's claim was speculative and no genuine issue of material fact remained in the matter.

The plaintiff, in her response to InterPark's motion, argued that a genuine issue of material fact remained in the matter. In support of her response, the plaintiff offers her deposition testimony as well as that of Bill Plavsic, Jaime Martinez, Rita Pacyna and photos of DCAM. She asserted that Interpark had a contractual duty to plow the lot by 8 a.m. Jamie Martinez, InterPark's manager of the UCH parking structures, testified that the subcontractor, Rick's, was late on the morning of the accident and that the lot should have been plowed before the plaintiff arrived for work. Additionally, the plaintiff argued that a genuine issue of fact remained as to whether InterPark caused an unnatural accumulation or aggravated a natural accumulation of snow. Rita Pacyna testified that DCAM had

depressions throughout the fifth floor that accumulated pools of ice and snow. The rubber blade she used to plow DCAM did not remove the snow and ice from the depressions. Rita Pacyna also stated that she was plowing the southwest corner of the lot and piling the snow on the sides of the parking level. The southwest area was the last area to be plowed on the morning of the plaintiff's accident. The plaintiff contends that a jury could find that snow from the depression or negligent plowing methods caused her fall.

Before the court ruled on the motion for summary judgment, the plaintiff moved to amend her complaint and strike InterPark's climatic data, which was attached as an exhibit to the motion for summary judgment. The trial court ordered that the two pages attached as an exhibit to the motion to strike be stricken. The court did not strike the climatic data in its entirety at that time. The trial court subsequently granted InterPark's motion for summary judgment. The trial court found that the facts and evidence were insufficient to show that an unnatural accumulation of snow caused or contributed to the plaintiff's fall. The trial court found that there was no causal nexus between InterPark's actions and any claimed unnatural accumulation of snow that caused or contributed to the plaintiff's fall.

The plaintiff filed a motion to reconsider. The trial court denied the plaintiff's motion along with her motion to amend the complaint and strike InterPark's climatic data in its entirety. The court held that the mere existence of a contract between InterPark and Rick's for snow removal does not extend a common law duty to the plaintiff under Illinois law. Additionally, the trial court found that the plaintiff's claims that the use of rubber plowing blades created an unnatural accumulation of snow were irrelevant because the plaintiff testified that she fell on an unplowed area of the parking garage.

The court also denied the plaintiff's motion to amend the complaint. The trial court found that the proposed amendment would not cure the defects in the complaint thereby necessitating a new ruling by the court. The plaintiff timely appealed.

The issues on appeal are: (1) whether InterPark had a common law duty to plow the parking garage to provide a safe egress for invitees; (2) whether the contract between InterPark and Rick's gave rise to a duty to plow the garage; (3) whether InterPark breached its duty by allowing an unnatural accumulation of snow and ice in depressions located throughout the garage; (4) whether InterPark breached its duty by negligently plowing the parking garage in a manner that caused the plaintiff's injury; (5) whether InterPark's climatic data was improperly admitted and considered by the trial court; and (6) whether the trial court abused its discretion by failing to allow the plaintiff to amend her complaint.

ANALYSIS

An order granting summary judgment is reviewed *de novo*. Morris v. Margulis, 197 Ill. 2d 28, 35, 754 N.E.2d 314, 318 (2001). Summary judgment "shall be rendered *** if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). A trial court is required to construe the record against the moving party and may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt. People ex rel. Department of Labor v. MCC Home Health Care, Inc., 339 Ill. App. 3d 10, 19, 790 N.E.2d 38, 44 (2003). If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences from the evidence, summary judgment may

not be granted. MCC Home Heath Care, 339 Ill. App. 3d at 19, 790 N.E.2d at 44.

DUTY TO PROVIDE SAFE INGRESS AND EGRESS

At issue is whether InterPark had a common law duty to plow the parking garage to provide a safe egress for the plaintiff/invitee. The plaintiff argues that Interpark had a duty to plow the egress area leading to the elevator, which was the only point of egress from the fifth level of the parking garage. The plaintiff argues that InterPark had a duty to maintain the safety of the premises. The plaintiff claims that the court in Kittle v. Liss, 108 Ill. App. 3d 922, 925, 439 N.E.2d 972, 974 (1982), held that a "[d]efendant's duty to provide a reasonably safe means of ingress and egress from his place of business for the use of his patrons is not abrogated by the presence of an accumulation of ice or snow which is natural." She asserts that this exception to the natural accumulation rule is also recognized in Johnson v. Abbott Laboratories, Inc., 238 Ill. App. 3d 898, 605 N.E.2d 1098 (1992), and McLean v. Rockford Country Club, 352 Ill. App. 3d 229, 816 N.E.2d 403 (2004). The plaintiff claims that under the exception, Interpark had a duty to clear the snow from the parking garage to provide a safe egress from the parking area to the elevator. The plaintiff contends that a question of fact exists as to whether InterPark was negligent and breached its duty failing to clear the area around the elevators prior to the start of the workday.

InterPark argues that the proper exception to the natural accumulation rule as recognized in Johnson v. Abbott Laboratories, Inc., 238 Ill. App. 3d 898, 905, 605 N.E.2d 1098, 1103 (1992), states that a property owner has a duty to illuminate an egress properly and repair or give adequate warning of a known dangerous condition. InterPark points out that this exception does not include a duty to plow the egress. InterPark insists there is no genuine issue of material fact because the

common law does not impose a duty to plow the egress.

"The essential elements of a cause of action based on common-law negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury caused by that breach." McLean, 352 Ill. App. 3d at 232-33, 816 N.E.2d at 407. A property owner has a general duty to provide a reasonable means of egress from their business. Johnson, 238 Ill. App. 3d at 905, 605 N.E.2d at 1103. Generally, a property owner has no duty to remove natural accumulations of snow and ice from his property. Tzakis v. Dominick's Finer Foods, Inc., 356 Ill. App. 3d 740, 746, 826 N.E.2d 987, 992 (2005). The duty to provide a safe egress is not abrogated by the presence of the natural accumulation of snow and ice. Johnson, 238 Ill. App. 3d at 905, 605 N.E.2d at 1103. The property owner has a duty to properly illuminate the egress and repair or give adequate warning of a known dangerous condition. Johnson, 238 Ill. App. 3d at 905, 605 N.E.2d at 1103.

InterPark did not breach a duty to the plaintiff by failing to plow the egress leading to the elevator. Illinois common law clearly establishes that each property owner has a duty to maintain a safe egress for invitees despite the natural accumulation of snow and ice. However, this duty is to properly illuminate the egress and repair or give notice of known dangerous conditions on the property. Contrary to the plaintiff's argument, this duty does not create an obligation for any property owner to *plow* their egress. The plaintiff offers no case law that expands the duty of a property owner to remove snow from the egress of its business. Although InterPark did have a duty to provide and maintain a reasonably safe egress from the parking facility, that duty did not extend to plowing.

CONTRACTUALLY CREATED DUTY FOR SNOW REMOVAL

At issue is whether the UCH/InterPark contract and the InterPark/Rick's contract gave rise to a duty to plow the parking facility. The plaintiff argues that the UCH/InterPark contract and the InterPark/ Rick's contract created a duty to plow the parking facility. UCH and InterPark entered into a contract for InterPark to manage the UCH parking facilities. Under that contract, the plaintiff argues that InterPark had a duty to keep the parking facility free from snow and manage the snow removal process. InterPark subcontracted with Rick's for snow removal services. The agreement between InterPark and Rick's specified that the rooftop parking area of DCAM was to be salted and plowed by 8 a.m. The plaintiff argues that InterPark contractually created a duty to remove snow and to have the service provided by 8 a.m. through its contractual agreements with UCH and Rick's. The plaintiff contends that the creation of this contractual duty is supported by Illinois case law. The plaintiff cites Schoondyke v. Heil, Heil, Smart & Golee, Inc., 89 Ill. App. 3d 640, 411 N.E.2d 1168 (1980), and Tressler v. Winfield Village Cooperative, Inc.,134 Ill. App. 3d 578, 481 N.E.2d 75 (1985), in which the court held that a contract to remove snow creates a duty to remove even natural accumulations of snow. The plaintiff claims that InterPark had a duty to plow the parking facility under both Illinois contract law and Illinois common law and a material issue of fact remains as to whether InterPark's actions constituted negligence.

InterPark argues that no contractual duty arose from either the UCH/InterPark or InterPark/Rick's contract. The contract between InterPark and UCH contains no language expressly imposing a duty upon InterPark to plow any of the parking facilities. The language in the contract imposes a duty on InterPark to maintain and operate the parking facilities. The only place snow

removal is mentioned is in the schedule of reimbursable operating expenses. There is no clause in the contract that specifically imposes a duty on InterPark to keep the parking facility free from snow or manage the snow removal process. InterPark also argues that the contract between InterPark and Rick's also does not impose this duty because it is merely a service contract between the two parties. The court in Wells v. Great Atlantic & Pacific Tea Co., 171 Ill. App. 3d 1012, 525 N.E.2d 1127 (1988), clearly states that a property management company does not owe a contractual duty to remove snow merely because it enters into a contract with a snow removal company. InterPark also contends that the plaintiff erroneously cites Schoondyke and Tressler in arguing that a contract to remove snow creates a duty to remove even natural accumulations of snow. InterPark asserts that it had no duty to plow the DCAM parking facility. Therefore, no genuine issue of material fact remains on this issue.

It is the law in Illinois that in the absence of a contractual obligation, there is no general duty on the part of a property owner to remove accumulations of ice or snow from areas maintained for the use of invitees where the accumulation is a natural one and not caused or aggravated by the property owner. Wells, 171 Ill. App. 3d at 1017, 525 N.E.2d at 1131. A landowner may be subject to liability if his voluntary undertaking to remove snow and ice is performed in a negligent manner. McBride v. Taxman Corp., 327 Ill. App. 3d 992, 996, 765 N.E.2d 51, 55 (2002). In limited circumstances, an owner may voluntarily assume a duty of snow removal if he contractually obligates himself to remove snow. Wells, 171 Ill. App. 3d at 1018, 525 N.E.2d at 1131; Schoondyke, 89 Ill. App. 3d at 645, 411 N.E.2d at 1172.

We find that neither the UCH/Interpark contract nor the InterPark/Rick's contract imposed

a duty on InterPark to plow the parking facility. For a duty to arise, one of these contracts must contain express language imposing an obligation on InterPark to plow the parking facility. Upon examining the UCH/InterPark contract, we find no language imposing a duty on InterPark to plow the parking facility. InterPark correctly asserts that the contract only contains general language regarding the maintenance and operation of the facilities and reimbursable expenses. Although snow removal is a reimbursable expense, the contract does not contain express language imposing a duty on InterPark to remove snow.

The contract between InterPark and Rick's also does not impose a duty on InterPark to remove snow from the DCAM parking facility. In McBride and Wells, the court held that property management companies do not undertake a duty to plow their property by merely contracting with a snow removal company. Wells, 171 Ill. App. 3d at 1018-19, 525 N.E.2d at 1131; McBride, 327 Ill. App. 3d at 995, 765 N.E.2d at 54. These cases clearly control the main issue in this case. No duty is imposed upon Interpark to remove snow based on its contract with Rick's.

Schoondyke and Tressler also do not impose a duty on InterPark to remove snow. The plaintiff argues that these cases impose a duty on property owners and managers to remove snow from their premises and extends the duty to third parties for a failure to do so. These cases do extend a duty to some third parties; however, these cases are distinguishable. In Schoondyke, a condominium owner's daughter sued the condominium association for damages arising from its failure to remove snow and ice from the premises. Schoondyke, 89 Ill. App. 3d at 643-44, 411 N.E.2d at 1171. The court held that the condominium association owed a duty to the plaintiff because it contractually assumed a duty to remove snow by virtue of the declaration of condominium

11

and condominium bylaws. Schoondyke, 89 Ill. App. 3d at 644, 411 N.E.2d at 1172. The court also concluded that the plaintiff was within the class of foreseeable plaintiffs because there was no relevant difference between the plaintiff and the owner-occupiers of the other units. Schoondyke, 89 Ill. App. 3d at 645, 411 N.E.2d at 1172. Similarly, in Tressler, the court held that a covenant to remove snow imposed a duty on the landlord to remove snow from the premises. Tressler, 134 Ill. App. 3d at 580-81, 481 N.E.2d at 77. The landlord can be held liable to remove snow only when he fails to exercise due care in performing the covenant. Tressler, 134 Ill. App. 3d at 581, 481 N.E.2d at 77.

These cases are clearly distinguishable and do not extend a duty to InterPark to plow the parking facility. The plaintiff has failed to show that InterPark expressly assumed a duty to plow the facility by way of a contract or covenant. The language in the UCH/InterPark contract to manage and operate the facilities is insufficient to create this duty. Additionally, nothing in the record suggests that InterPark entered into an agreement with any invitee to remove snow. This type of agreement would contractually impose a duty on InterPark to plow the facility and expose it to liability for its failure to do so. InterPark did not have a duty to remove snow based on the UCH/Interpark contract and the InterPark/Rick's contract.

UNNATURAL ACCUMULATION OF SNOW AND AGGRAVATION OF NATURAL ACCUMULATION OF SNOW

The plaintiff argues that two additional issues of material fact remain. The plaintiff first argues that InterPark breached its duty by allowing an unnatural accumulation of snow and ice in depressions located across the parking facility. The plaintiff also contends that InterPark breached its duty by negligently plowing the parking facility in a manner that caused her injury. In support of both

12

theories, the plaintiff offers the testimony of Rita Pacyna, a Rick's employee and DCAM plow-truck driver. Rita explains in her deposition testimony that the roof of the parking facility contained random depressions that would accumulate snow and ice. Specifically, there was a depression about four feet west of the pole where the plaintiff claims she fell. The depressions accumulated snow and ice that would freeze over. Rita also explained that the plows used rubber blades to clear the parking facility; however, these blades did not remove snow in the depressions. Metal blades would have cleared the snow and ice completely from the depressions. The plaintiff claims that there is a genuine issue of material fact as to whether InterPark's failure to repair these depressions caused an unnatural accumulation of snow.

The plaintiff additionally argues that a genuine issue of material fact remains as to whether Rick's negligently plowed the parking facility resulting in an unnatural accumulation of snow. The plaintiff claims that Rick's negligently plowed the parking facility in a manner that pushed unnatural accumulations of snow onto the back wall and left the strip of the facility leading to the elevator unplowed. The plaintiff contends that InterPark's failure to properly instruct Rick's resulted in snow drifts that caused the plaintiff's fall. The snow from the mounds along the walls created unnatural snow drifts creating the condition resulting in the plaintiff's fall.

InterPark argues that neither of the plaintiff's theories creates a genuine issue of material fact. InterPark claims that the plaintiff fell on a natural accumulation of snow. The plaintiff testified in her deposition that she was walking on an unplowed area of the parking facility and fell on a snow drift accumulating in that area four feet from a depression. It is therefore irrelevant whether snow accumulated in a depression from failure to use a metal blade because the plaintiff by her own

testimony, fell four feet away from the depression. Additionally, InterPark contends that the plaintiff has failed to produce any evidence or facts beyond mere speculation that the snow that caused her accident was an unnatural accumulation. The plaintiff also failed to produce evidence or facts showing that Rick's negligently plowed the parking facility. This court held in Tzakis v. Dominick's Finer Foods, Inc., 356 Ill. App. 3d 740, 826 N.E.2d 987 (2005), that a plaintiff need not prove his or her case at a summary judgment hearing, but must present facts to show that the origin of the snow and ice was unnatural or caused by the defendant. InterPark argues that the plaintiff produced no expert testimony or factual evidence to show that the alleged snow drift that caused her injury originated in the depression four feet away from where she fell. The plaintiff also produced no evidence or facts supporting her claim that the plow truck should have plowed in front of the elevator first. Without this evidence, no genuine issue of material fact remains.

"'[A] property owner who voluntarily undertakes the removal of snow and ice can be subjected to liability where the removal results in an unnatural accumulation of snow or ice that causes [an] injury to [the] plaintiff.'" Tzakis, 356 Ill. App. 3d at 746, 826 N.E.2d at 992, quoting Russell v. Village of Lake Villa, 335 Ill. App. 3d 990, 994, 782 N.E.2d 906, 909 (2002). To avoid a summary judgment, a plaintiff must allege sufficient facts for a trier of fact to find that the defendant was responsible for an unnatural accumulation of snow and ice which caused the plaintiff's injuries. Tzakis, 356 Ill. App. 3d at 746, 826 N.E.2d at 992. In this case, the plaintiff's argument is insufficient without a causal nexus between the defendant's actions and the creation of an unnatural accumulation of ice and snow. Tzakis, 356 Ill. App. 3d at 747, 826 N.E.2d at 993. Mere speculation is not enough to create a genuine issue of material fact sufficient to survive a motion for summary

judgment. Tzakis, 356 Ill. App. 3d at 747, 826 N.E.2d at 994.

After reviewing the record in its entirety, we find that the plaintiff has proffered no evidence or facts sufficient to create a genuine issue of material fact for either theory of liability. The plaintiff offers no facts or evidence to bring this theory beyond mere speculation. Contrary to the plaintiff's assertion, the deposition of Rita Pacyna is insufficient to support this claim. Rita Pacyna's testimony regarding the rubber blades leaving unnatural accumulations of snow and ice is irrelevant because the plaintiff did not fall in a depression or on a plowed section of the parking facility. The plaintiff would have to produce facts establishing how the depression produced an unnatural snow drift in the area where she fell. Although the plaintiff does not have to prove her case to survive summary judgment, she must go beyond mere speculation. The plaintiff has failed to establish a causal connection between her fall and InterPark's actions. The trial court properly granted summary judgment on this issue.

The plaintiff also alleges that InterPark breached its duty by negligently plowing the parking facility in a manner that caused her fall. Again she offers no evidence or facts demonstrating how the plow's route for snow removal was negligent. Her assertion is that it was negligent for the plow to leave the area close to the elevator for last. The testimony of Jaime Martinez offered by the plaintiff to demonstrate that InterPark had the authority to control the plow route is of no value to the plaintiff in supporting her theory. The plaintiff's speculations about negligent plow routes and snow drifts are insufficient to survive summary judgment without more facts. There is no causal nexus between InterPark and the creation of an unnatural accumulation of ice and snow. Summary judgment was therefore appropriate on this issue.

15

MOTION TO STRIKE

The plaintiff argues that the climatic weather reports submitted by InterPark were an unsigned, unattested summary of weather conditions and a material issue of fact remains in determining how much the trial court relied on these reports. The plaintiff claims that InterPark relies on this climatic data to support its claim that snow was still falling and causing a natural accumulation of snow when the plaintiff fell in the parking facility. The plaintiff claims that the court in Robidoux v. Oliphant, 201 Ill. 2d 324, 347, 775 N.E.2d 987, 1000 (2002), held that an affiant must sign the affidavit to ensure that trial judges are relying on valid evidentiary facts upon which to base a decision.

> "Affidavits in support of *** a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim *** is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 210 Ill. 2d R. 191(a).

Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment. Robidoux, 201 Ill. 2d at 335, 775 N.E.2d at 994. "An affidavit submitted in the summary judgment context serves as a substitute for testimony at trial."

Robidoux, 201 Ill. 2d at 335, 775 N.E.2d at 994. "Therefore, it is necessary that there be strict compliance with Rule 191(a) 'to insure that trial judges are presented with valid evidentiary facts upon which to base a decision'". Robidoux, 201 Ill. 2d at 336, 775 N.E.2d at 994, quoting Solon v. Godbole, 163 Ill. App. 3d 845, 851 (1987).

InterPark offered climatic records from February 21 and 22, 2001, from Compu-Weather experts. The packet does contain a sworn statement; however, the signatures do not meet the requirements of Supreme Court Rule 191. The signatures are from two people on behalf of the named director and data administrator of the National Climatic Data Center. This is not a proper sworn statement and the trial court should have stricken these reports; however, the absence of the climatic reports does not create a genuine issue of material fact. In light of our analysis of this case as a whole, any error on the part of the trial court in failing to strike the reports was harmless.

FAILURE TO AMEND THE COMPLAINT

The plaintiff argues that the trial court abused its discretion by failing to allow her to amend the complaint. The plaintiff contends that she meets the standards set forth in Loyola Academy v. S&S Roof Maintenance, Inc., 146 Ill. 2d 263, 273, 586 N.E.2d at 1211, 1215-16 (1992). The plaintiff alleged in the original complaint that "InterPark failed to remove the accumulated ice and snow in a timely manner, having undertaken said duty of snow and ice removal and allowed an unnecessary accumulation of ice and snow to be present at the only means of egress." The proposed amendment specified these allegations and explained that "University of Chicago Hospital contracted with InterPark to manage and operate all of the parking facilities at University of Chicago Hospital, including DCAM. Per this agreement, InterPark was responsible for managing the snow removal

17

process, creating a duty imposed on InterPark to remove the natural accumulation of snow and ice." The plaintiff claims she developed this specificity after the depositions of Bill Plavsic, Jamie Martinez, and Rita Pacyna. The plaintiff argues that the Illinois Code of Civil Procedure allows liberal amendments of pleadings, and the trial court abused its discretion in failing to allow her to amend the complaint.

Pursuant to section 2-1005 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005 (West 2004)), the trial court shall permit pleadings to be amended before or after entry of summary judgment upon just and reasonable terms. Loyola Academy, 146 Ill. 2d at 273, 586 N.E.2d at 1216. The standard of review is abuse of discretion. Loyola Academy, 146 Ill. 2d at 273-74, 586 N.E.2d at 1216. The appellate court must examine (1) whether the proposed amendment would cure defective pleadings; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment was timely; and (4) whether previous opportunities to amend the pleading could be identified. Loyola Academy, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16.

In this case, the trial court did not abuse its discretion because the plaintiff's proposed amendment would not have cured the defective pleading. The plaintiff claims that the amendment would clarify that InterPark's duty in tort was created by the contract. Specifically, that UCH contracted with InterPark to manage and operate all of the parking facilities at UCH, including DCAM. Per this agreement, InterPark was responsible for managing the snow removal process, thereby creating a duty to remove the natural accumulation of snow and ice. As explained above, the University of Chicago contract did not expressly state that InterPark had an obligation or duty to

remove snow from the DCAM parking facility. Therefore, InterPark did not have a duty to remove snow from the premises. Thus, it could not have breached any duty to the plaintiff. The clarified amendment proposed by plaintiff does not cure this defect. The trial court did not abuse its discretion by denying the plaintiff's motion to amend the complaint.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GREIMAN and THEIS, JJ., concur.