2018 IL App (1st) 180582

FIRST DISTRICT
SECOND DIVISION
December 18, 2018

No. 1-18-0582

| SHARON JORDAN, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois |
| v. | ) | |
| | ) | No. 15 L 9695 |
| THE KROGER CO., d/b/a FOOD 4 LESS and | ) | |
| PETE'S LAWN CARE, INC., | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff Sharon Jordan was injured when she slipped and fell on ice outside a grocery store owned by defendant Food 4 Less. At the time of her accident, defendant Pete's Lawn Care, Inc., was contracted to perform snow and ice removal on the premises. Jordan brought suit against Food 4 Less and Pete's Lawn Care. Although there was no evidence of an unnatural accumulation of ice, Jordan argued that by entering into a snow and ice removal contract, defendants assumed a duty to third parties to remove natural accumulations of snow and ice from the premises.

¶ 2 The trial court granted summary judgment to defendants. Jordan now appeals. We affirm, finding that, as a matter of law, when a property owner contracts with a snow removal company to remove natural accumulations of snow and ice, the mere existence of the contract does not create a duty to third parties to protect them from such accumulations, absent evidence that the third party personally relied on the contract.

¶ 3                                    BACKGROUND

¶ 4        Around 4 p.m. on November 12, 2013, Jordan went to a Food 4 Less grocery store in Chicago, Illinois. The temperature was below 32 degrees, but there was no snow accumulation on the ground. While walking up the access ramp near the store entrance, Jordan slipped and fell on "black ice" atop the black asphalt of the ramp. Although she did not see the ice before her fall, she both saw and felt it afterwards. She was taken by ambulance to Holy Cross Medical Center, where an x-ray revealed three bones displaced in her right ankle, requiring surgery.

¶ 5        At all relevant times, Food 4 Less had a contract with Cherry Logistics which in turn had a contract with Pete's Lawn Care to provide snow and ice removal on the premises. Jordan was not aware of either contract at the time of her fall; in a deposition, she stated that she had never heard of Cherry Logistics or Pete's Lawn Care. With regard to ice removal, Food 4 Less's contract with Cherry Logistics provided that Cherry Logistics would monitor weather conditions and "act reasonably" in determining when to apply de-icer to the store's sidewalks and parking lot.

¶ 6        Cherry Logistics' contract with Pete's Lawn Care was significantly more detailed. In relevant part, subsection b ("Salting") provided:

            "i. Salting will commence once ice builds up or slippery conditions exist on pavement. ***

                                           * * *

            iii. [Pete's Lawn Care] shall monitor the Location for any patches of ice, and for any thaw and re-freeze, and shall apply ice melting agent in sufficient quantities to keep all Areas clear and safe."

¶ 7        Subsection c ("Handicap Areas") provided that "[e]xtra attention must be given to all handicap sidewalk ramp access areas and designated handicap parking spaces during business hours.  These areas must be cleared of any snow, slush, or ice down to bare pavement at all times."

¶ 8        Finally, subsection h ("Commencement of Services") provided:

"i. Business Hours: Services shall start once snow accumulates to one (1) inch and no later than six (6) am on the day of snowfall or when ice builds up or slippery conditions exist on pavement, and shall continue during and following the ice/snow storm (Event) until the goal of bare pavement has been achieved. ***

ii. Non-Business Hours: All Areas shall be free of snow, slush, and/or ice *** not less than one (1) hour prior to Location opening."

The business hours of the Food 4 Less store were from 6 a.m. to midnight.

¶ 9        According to weather reports submitted by Jordan, there was light precipitation on the day before her accident.  Around 11 a.m., when the temperature was 45 degrees, it began to rain; the rain changed to light snow as temperatures fell throughout the afternoon.   The temperature reached a low of 25 degrees shortly after midnight.  On the day of Jordan's accident, there was no further precipitation.  The temperature was below 32 degrees in the morning, rose to 33 degrees from around 2 to 3 p.m., then dropped back below 32 degrees.  It is undisputed that Pete's did not perform any snow or ice removal services for Food 4 Less in November 2013 prior to Jordan's accident.

¶ 10       Jordan brought suit against Food 4 Less and Pete's Lawn Care.   In her amended complaint, she alleged that defendants were negligent in monitoring weather conditions to

determine whether snow and ice removal services were required, and they were also negligent in removing snow and ice from access ramps on the property.

¶ 11       Pete's Lawn Care moved to dismiss based on the fact that it did not perform *any* snow or ice removal services on the property before Jordan's accident and, therefore, could not have been negligent in the performance of such services. Jordan responded by arguing that Pete's Lawn Care voluntarily undertook a contractual duty to remove ice from the premises and, as such, its duty was defined by the scope of its contract. The trial court denied the motion to dismiss, finding that "Plaintiff is a third-party beneficiary of the contract between Pete's & Food 4 Less and *** Defendant may owe a duty to Plaintiff based upon the contract."

¶ 12       Defendants then moved for summary judgment, arguing that (i) since Pete's Lawn Care provided no ice removal services in November prior to Jordan's fall, it could not have created or aggravated an unnatural accumulation of ice; (ii) as a matter of law, defendants had no duty to remove natural accumulations of ice from the property; and (iii) defendants did not have actual or constructive notice of the ice prior to Jordan's fall.

¶ 13       In response, Jordan did not dispute defendants' assertion that they did not create or aggravate an unnatural accumulation of ice, but she argued that "the contract between the Defendants created a duty to remove *ALL* ice in the parking lot consistent with the language of the contract." (Emphasis in original.)

¶ 14       On October 30, 2017, the trial court granted defendants' motion for summary judgment, finding that there was no evidence (i) of an unnatural accumulation of snow or ice, (ii) that defendants had actual or constructive notice of snow or ice, or (iii) that defendants breached any contractual duty. In denying Jordan's motion for reconsideration, the court elaborated on that last point, stating that "there is insufficient evidence that the contract was triggered by the

amount of ice on the pavement that day," since Jordan did not see any ice in the parking lot before her fall.

¶ 15                                                    ANALYSIS

¶ 16        Jordan argues that the trial court erred in granting summary judgment to defendants because (i) defendants voluntarily undertook a duty to remove natural accumulations of ice outside the Food 4 Less store and (ii) the trial court erred in finding that Pete's ice removal duties under the contract were not triggered.

¶ 17        Summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016).  We review the trial court's grant of summary judgment *de novo*, construing the record strictly against the movant and liberally in favor of the nonmoving party.  *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)).  To prevail, the nonmoving party must present some evidence that would arguably entitle her to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 18        Under the natural accumulation rule, property owners have no general duty to remove natural accumulations of snow and ice from their property because " 'it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months.' "  (Internal quotation marks omitted.)  *Allen v. Cam Girls, LLC*, 2017 IL App (1st) 163340, ¶ 29 (quoting *Claimsone v. Professional Property Management, LLC*, 2011 IL App (2d) 101115, ¶ 21); see also *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 233-34 (2010) (imposing an obligation to remove natural accumulations of snow and ice would be "unreasonable and impractical" (internal quotation marks omitted)). Thus, to prevail in a slip-and-fall case involving snow and ice, a plaintiff typically bears the burden of showing that (i) the

accumulation of snow or ice was unnatural and (ii) the defendant had actual or constructive knowledge of the condition. *Hornacek v. 5th Avenue Property Management*, 2011 IL App (1st) 103502, ¶ 29.

¶ 19    Jordan does not assert in this appeal that she fell on an unnatural accumulation of ice, nor would the record support such an inference. Instead, Jordan argues that, per the Food/Cherry and Cherry/Pete contracts, defendants voluntarily assumed a contractual duty to remove natural accumulations of ice, and they may therefore be held liable in tort to third parties for negligently failing to fulfill that duty.

¶ 20    A defendant who undertakes to remove natural accumulations of snow and ice has a duty of reasonable care. *Allen*, 2017 IL App (1st) 163340, ¶ 30. In such a case, the defendant's tort liability to third parties is governed by section 324A of the Restatement (Second) of Torts, which provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

See *Bell v. Hutsell*, 2011 IL 110724, ¶ 12 (recognizing the adoption of section 324A in Illinois). Section 324A explicitly does not express an opinion as to whether "the making of a contract ***, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section."  Restatement (Second) of Torts § 324A caveat 1 (1965).

¶ 21 Jordan does not identify which subsection of section 324A she is relying on, but it is clear that defendants' liability cannot be predicated on either subsection (a) or (b).  Subsection (a) does not apply because Jordan does not claim that defendants increased the risk of harm from slip-and-fall accidents.  She does not allege, for instance, that a premises defect caused water to pool and refreeze in areas where people walk (see *Reed v. Country Place Apartments-Moweaqua I, L.P.*, 2016 IL App (5th) 150170, ¶ 26) or that negligent snow removal efforts led to unnatural ice buildup (see *Webb v. Morgan*, 176 Ill. App. 3d 378, 383 (1988)).  Indeed, it is undisputed that Pete's Lawn Care did not engage in any snow removal efforts in November prior to Jordan's accident.  Nor does subsection (b) apply, because, as discussed, there is no general duty to remove natural accumulations of snow and ice.

¶ 22 That leaves only subsection (c): reliance.  Jordan does not claim that she personally relied on the Food/Cherry and Cherry/Pete contracts.  On the contrary, she admitted in her deposition that she had never heard of Cherry Logistics or Pete's Lawn Care.  But liability under subsection (c) may be premised on reliance of the third party *or* "the other"—*i.e.*, the party to whom the defendant undertook to provide services.  Jordan's theory of liability, construed generously, is that (i) Food 4 Less relied on Cherry Logistics to perform snow and ice removal per the terms of their contract; (ii) likewise, Cherry Logistics relied on Pete's Lawn Care to fulfill its contractual duty; and (iii) their reliance entitles Jordan, as a third-party beneficiary of the Food/Cherry and

Cherry/Pete contracts, to recover in tort for her injuries because Pete's Lawn Care allegedly failed to fulfill its contractual duties.

¶ 23    Illinois courts are split as to whether a party who contracts to remove snow and ice, and then fails to do so, can be held liable under section 324A(c) to third parties who are injured by natural accumulations of snow and ice. Jordan urges us to follow *Eichler v. Plitt Theatres, Inc.*, 167 Ill. App. 3d 685 (1988), in which the court answered that question in the affirmative. But there are numerous other Illinois cases that have invoked the unnatural accumulation rule to preclude recovery. See, *e.g.*, *McBride v. Taxman Corp.*, 327 Ill. App. 3d 992 (2002); *Wells v. Great Atlantic & Pacific Tea Co.*, 171 Ill. App. 3d 1012 (1988).

¶ 24    In *Eichler*, plaintiff slipped and fell while walking across an ice-covered parking lot. *Eichler*, 167 Ill. App. 3d at 688-89. She conceded that there was no unnatural accumulation of ice and snow at the time of her fall. *Id.* at 688. Nevertheless, she brought suit against four defendants: (i) Urban, the landowner; (ii) Plitt, which leased the property from Urban; (iii) Hutensky, a neighboring landowner; and (iv) Welhausen, the snow removal contractor hired by Urban. Urban and Hutensky had an easement agreement whereby each of them agreed to remove snow and ice from their respective properties. Plitt, as part of its lease agreement, agreed to accept Urban's responsibilities under the easement agreement.

¶ 25    *Eichler* held that summary judgment was inappropriate as to Urban and Plitt, but appropriate as to Hutensky and Welhausen. *Id.* at 689. The court reasoned that Hutensky did not undertake any contractual obligations regarding Urban's land. *Id.* at 692. As for Welhausen, it only contracted to remove snow, not ice. *Id.* But both Urban and Plitt undertook a contractual obligation to remove snow and ice from the parking lot on which plaintiff fell. Based upon the contracts between the parties, Hutensky relied on Urban for snow and ice removal services, and

Urban, at least arguably, relied on Plitt.[1]  Thus, *Eichler* found that both Urban and Plitt could potentially be held liable to third parties for damages caused by their negligent failure to fulfill their contractual obligations.  *Id.* at 692-93.

¶ 26          In reaching this conclusion, *Eichler* relied primarily on *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204 (1979), and *Scott & Fetzer Co. v. Montgomery Ward Co.*, 112 Ill. 2d 378 (1986).  Both *Pippin* and *Scott* dealt with liability to third parties for negligent performance of a voluntary undertaking, but in a context unrelated to snow and ice removal.

¶ 27          In *Pippin*, 78 Ill. 2d at 206-07, plaintiff's decedent was fatally stabbed in the lobby of a housing project owned and operated by the Chicago Housing Authority.  At the time, the Authority had a contract with Interstate to provide security services at the building.  Plaintiff sued both the Authority and Interstate.  The trial court granted summary judgment to defendants, but *Pippin* reversed, holding that, although a landowner has no general duty to protect against criminal acts by third parties, both defendants could still be held liable under a voluntary undertaking theory.  *Id.* 209-11.  In analyzing Interstate's liability under section 324A, the court stated:

> "Interstate's duty does not arise under either subsection (a) or (b), as plaintiff's complaint does not allege that Interstate's conduct actually increased the risk of harm to Pippin, and, as we have already determined, there was no preexisting duty on the part of the Authority to provide protection in this instance.
>
> Subsection (c), however, sets up reliance upon the undertaking as a separate basis for finding liability. *** By contracting with Interstate for guard services, the Authority, as a matter of law, relied upon Interstate to perform its undertaking." *Id.* at 211.

---

[1] The court found a question of fact as to whether Urban actually relied on Plitt to remove snow and ice from the parking lot, since it was Urban that hired Welhausen.  *Id.* at 693.

As for the Authority, *Pippin* held that its duty was limited by the extent of its undertaking. The CHA did not undertake to perform guard services itself, but it did have a duty to use reasonable care in hiring Interstate. Thus, the Authority could at most be liable for negligent hiring—which was alleged in the complaint. *Id.* at 210.

¶ 28    Our supreme court applied these same principles in *Scott*, 112 Ill. 2d 378, in which a fire in a storage warehouse damaged tenants' property. One of the tenants, Montgomery Ward, had hired defendant Burns to install fire warning systems in the warehouse, which malfunctioned. The other tenants brought suit against Burns, arguing that their property was damaged because of Burns' negligence in performing its contractual undertaking. *Id.* at 385. *Scott* reversed the dismissal of the tenants' claims against Burns. It held that as a matter of law, Ward relied on Burns to perform its contractual undertaking and, therefore, Burns had a duty of care to third parties under section 324A(c). *Id.* at 390-91.

¶ 29    Initially, we observe that even if we were to follow *Eichler*'s application of *Pippin* and *Scott* to slip-and-fall cases involving snow and ice, Food 4 Less would still be entitled to summary judgment. As noted, Jordan did not present evidence that Food 4 Less increased the risk of harm from slip-and-fall accidents. Additionally, Food 4 Less did not undertake to perform snow or ice removal itself; it merely contracted with Cherry Logistics for that purpose. Thus, Food 4 Less could, at most, be liable for negligence in hiring Cherry Logistics. *Pippin*, 78 Ill. 2d at 210; see also *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 582 (2007) (property manager does not undertake a duty to plow its property merely by contracting with snow removal company). Because Jordan does not allege negligent hiring, Food 4 Less is not liable for Jordan's injuries as a matter of law.

¶ 30    Just as crucially, neither *Pippin* nor *Scott* involved the imposition of liability for injuries caused by natural accumulations of snow and ice. *Cf. Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 172 (2009) (refusing to extend the rationale of *Pippin* to allow a medical malpractice action by a nonpatient third party). Notwithstanding *Eichler*, Illinois courts have repeatedly rejected the argument that the existence of a snow removal contract overrides the natural accumulation rule.

¶ 31    In this regard, *Wells*, 171 Ill. App. 3d 1012, is directly analogous to the present case. Plaintiff slipped on ice in a parking lot and brought suit against the snow removal contractor, Vasser. She did not present evidence of an unnatural accumulation of snow, but she argued that Vasser was negligent because he failed to completely remove snow from the premises, as was required by his contract with the landowner. *Wells* rejected this argument, stating:

"[P]laintiff's allegation that [Vasser] may not have performed his job in accordance with the terms of his contract with [the landowner] is not sufficient to impose liability. His obligation to comply with the contract was owed to [the landowner], not to plaintiff. [Citation.] Vasser's duty to plaintiff was to abstain from negligence. Consequently, absent evidence of an unnatural accumulation or negligent plowing operations, there is no showing of an existing duty on the part of the defendants." *Id.* at 1019-20.

¶ 32    Similarly, in *McBride*, plaintiff slipped and fell on snow and ice outside a store entrance and brought suit against Arctic, the snow removal contractor. *McBride*, 327 Ill. App. 3d at 993. She argued that Arctic was liable to her based on its contract with the property manager, which required that " 'all sidewalk areas shall be completely cleared of ice and snow from end-to-end.' " *Id.* at 994. *McBride* disagreed, explaining: "There have been cases in which a duty to third parties has been imposed on the snow-removal contractor, but the duty was only not to

negligently remove snow by creating or aggravating an unnatural accumulation of snow or ice." *Id.* at 997 (citing *Madeo v. Tri-Land Properties, Inc.*, 239 Ill. App. 3d 288 (1992); *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 330 (1992)). In the absence of any evidence that plaintiff fell on an unnatural accumulation of snow and ice, *McBride* held that summary judgment for Arctic was proper, notwithstanding plaintiff's allegation that Arctic failed to fulfill its duties under the snow removal contract. *Id.* at 997-98; see also *Flight v. American Community Management, Inc.*, 384 Ill. App. 3d 540, 544 (2008) (summary judgment for landowner and snow removal contractor was proper since there was no evidence that plaintiff fell on an unnatural accumulation of ice); *Strahs v. Tovar's Snowplowing, Inc.*, 349 Ill. App. 3d 634, 639-40 (2004) (directed verdict for snow removal contractor was proper since plaintiff provided no factual basis for concluding she fell on an unnatural accumulation of ice).

¶ 33    Jordan urges us to follow *Eichler*, while defendants urge us to follow longstanding Illinois precedent as articulated in *McBride*, *Wells*, *Flight*, and *Strahs*. Neither party offers significant analysis as to why this court should favor one approach over the other.

¶ 34    But we are mindful that our supreme court recently reaffirmed the natural accumulation rule in *Krywin*, 238 Ill. 2d at 227-32 (collecting cases and holding that transit authority had no duty to remove natural accumulations of snow and ice from train platforms). In doing so, our supreme court stated that "the hazards presented [by natural accumulations of snow and ice] have always been acknowledged, but the imposition of an obligation to remedy those conditions would be so unreasonable and impractical as to negate the imposition of a legal duty to do so." (Internal quotation marks omitted.) *Id.* at 232-33. Similarly, this court has observed: " 'The rule exonerating landlords from liability for natural accumulations recognizes the climatic vagaries of this area with its unpredictable snowfalls and frequent temperature changes. Snowstorms cannot

be foreseen or controlled. Thus it has been considered that another standard would impose an unreasonable burden of vigilance and care on landlords.' " *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 748 (2005) (quoting *Lapidus v. Hahn*, 115 Ill. App. 3d 795, 801 (1983)); see also *Barber v. G.J. Partners, Inc.*, 2012 IL App (4th) 110992, ¶ 25 (although shoveling and salting are "desirable actions," they can rarely be done perfectly, and "requiring such perfection would cause an unreasonable burden on property owners in this state").

¶ 35 In light of these principles, we are persuaded to follow *McBride* in holding that merely entering into a snow removal contract does not create in the contracting parties a duty to protect third parties from natural accumulations of snow and ice, at least where the third parties did not personally rely on the contract. Because Jordan did not present evidence that the ice on which she fell was an unnatural accumulation or that she relied on the Food/Cherry and Cherry/Pete contracts, the trial court properly granted summary judgment to defendants.

¶ 36 *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill. App. 3d 640 (1980), and *Tressler v. Winfield Village Cooperative, Inc.*, 134 Ill. App. 3d 578 (1985), cited by Jordan on this issue, are both distinguishable. In *Schoondyke*, 89 Ill. App. 3d at 642, a condominium resident brought suit against the condominium association, which assumed a duty in its bylaws to remove snow from common areas. Similarly, in *Tressler*, 134 Ill. App. 3d at 579, a tenant brought suit against her landlord, who stated in the tenant handbook that snow removal would be provided. Because the defendants had voluntarily undertaken to remove natural accumulations and had so advised the injured parties, both cases found that the natural accumulation rule did not apply. *Schoondyke*, 89 Ill. App. 3d at 645; *Tressler*, 134 Ill. App. 3d at 581. *Schoondyke* additionally based its holding on "the policy and social requirements of the condominium community." (Internal quotation marks omitted.) *Schoondyke*, 89 Ill. App. 3d at 645.

¶ 37    In contrast to the *Schoondyke* and *Tressler* plaintiffs, Jordan is not a resident of the property at issue; she is a business invitee to whom the policy and social requirements referenced in *Schoondyke* do not apply. Moreover, as discussed, she was not advised by defendants that they would engage in snow and ice removal for her benefit or the benefit of others. Accordingly, *Schoondyke* and *Tressler* do not apply here.

¶ 38    Strong policy considerations underlie the result we reach. Finding potential liability to third parties under circumstances where a landowner contracts for the removal of natural accumulations of snow and ice and where, in the absence of contract, no liability would exist, would serve to discourage (i) landowners from arranging for the removal of natural accumulations of snow and ice and (ii) contractors from agreeing to provide such services. In effect, Jordan's theory of liability would expose the contracting parties to countless claims for falls caused by natural accumulations because the existence of the contract for snow and ice removal coupled with the plaintiff's fall on snow and ice would be sufficient to create a genuine issue of material fact as to nonfeasance under the contract. As the expansion of liability for falls due to natural accumulations would significantly undercut and erode the general rule of nonliability, we decline to adopt Jordan's position.

¶ 39    Jordan finally argues that summary judgment was improper in light of the trial court's finding that "Plaintiff is a third-party beneficiary of the contract between Pete's & Food 4 Less and *** Defendant may owe a duty to Plaintiff based upon the contract." Initially, we observe that Jordan would only have rights under the parties' contracts if she were an intended, rather than incidental, third-party beneficiary, which the trial court did not find. *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶¶ 14-15; see also *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1008 (2005) (there is a presumption

against intended beneficiary status that "can only be overcome by an implication so strong as to be practically an express declaration."). More importantly, Jordan did not bring a breach of contract suit—her amended complaint sounds only in tort—and she does not cite any law for the proposition that her status as a third-party beneficiary would confer upon her rights in tort.

¶ 40                                    CONCLUSION

¶ 41        Because Jordan presented no evidence that the ice on which she fell was an unnatural accumulation, summary judgment for defendants was proper. We therefore need not discuss whether Pete's Lawn Care's ice removal duties were triggered under the Cherry/Pete contract.

¶ 42        Affirmed.